## William Benson's Estate.    Joe A. Davis's Appeal.

*Rule of construction—Will—Bequest of library—Class of legatees.*

Testator directed as follows: " My law books to be taken charge of by H. H. Benson and to be divided among my nephews who may read law, not to be sold, never, rather to be burned." Two of testator's nephews, James and Davis, were admitted to the bar subsequent to the date of testator's will, and prior to his death. Paul was a student of law at the time of testator's death, and was subsequently admitted to the bar. Isaac was a student of law at the time of testator's death, and read law for a year or more, but subsequently engaged in another business, and apparently abandoned his intention to be admitted to the bar. *Held*, that James, Davis and Paul were entitled to testator's library.

" To read law " means to take up the study of the law with the purpose of being admitted to the bar and practicing the profession.

The rule that a will speaks from the time of the testator's death must, like all rules of construction, yield to a manifest intention to the contrary.

Argued May 1, 1895. Appeal, No. 457, Jan. T., 1895, by Joe A. Davis, from decree of O. C. Erie Co., May T., 1891, No. 152, sustaining exceptions to master's report. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Exceptions to master's report.

Testator executed his last will and testament, March 7, 1880, and died June 2, 1891. The only clause in his will material to

this case is the following : " My law books to be taken in charge by H. H. Benson ; but to be divided among my nephews who may read law—not to be sold—never—rather to be burned."

Four nephews claimed an interest in the library. The executors under the will of the testator being in doubt as to whether the duty of making a division of said law books devolved on H. H. Benson, individually, or upon the executors of the will ; also as to who were the legal beneficiaries under said provision in the will, petitioned the court to decree as to the proper person to make a division, and also the persons entitled to participate in the division of said books.

The court appointed E. S. Whittelsey, master, who found the following facts :

Two of the nephews, James B. Benson of Pa., and J. A. Davis of Ill., were admitted to the bar subsequent to the date of testator's will but prior to his death, and they were practicing lawyers at the time of his death. The other two, Isaac Lloyd Benson and Paul A. Benson, had both been duly registered as students at law by the testator himself, but had not been admitted to the bar at the time of his death. Paul A. Benson completed his studies, was admitted to the bar, and engaged in the practice of the law. Isaac Lloyd Benson was registered as a student on July 7, 1875, but never completed his studies, and has never been admitted to the bar. He has been engaged in other business, but testified that he had never abandoned his intention of completing his studies and becoming a member of the bar. Two witnesses testified that he had from time to time stated this intention to them.

The master recommended a decree that the law books of testator be divided by H. H. Benson equally between James B. Benson, J. A. Davis and Paul A. Benson.

On exceptions the court, in an opinion by GUNNISON, P. J., awarded the whole of testator's library to Paul A. Benson. J. A. Davis appealed.

*Error assigned* was sustaining exceptions to the master's report.

*S. M. Brainerd, Geo. H. Higgins* with him, for appellant.— The intention of testator must govern : Thompson's App., 100

Pa. 478 ; and the meaning of the words at the time they were used: Board of Missions v. Society for Advancement of Christianity, 9 Phila. 279. The will does not speak from testator's death where a fair construction of the language indicates a contrary intention: Clark's Est., 82 Pa. 528; 1 Redfield on Wills, 379.

*Clark Olds*, for appellee, cited: Act of June 4, 1879, P. L. 88; Bower's Est., 33 L. Int. 229; Campbell v. Reeder, 18 N. Y. 412; 1 Redfield on Wills, 385; Hawkins on Wills, 2; Brisben's App., 70 Pa. 410.

OPINION BY MR. JUSTICE FELL, July 18, 1895 :

The only difficulty in this case is to determine what the testator meant by the expression " my nephews who may read law." The learned master and the court below were clearly right in holding that Isaac L. Benson was not entitled to a distributive share of the testator's law library. " To read law," while not strictly a technical legal term to which a certain meaning must attach to the exclusion of all others, is yet an expression which should find its interpretation in the common understanding of lawyers. Among lawyers " to read law " means to take up the study of the law with the purpose of being admitted to the bar and practicing the profession. Nor is its meaning confined to the preparatory course ; it may properly be said to include that reading of cases and text-books of which every lawyer does more or less after his admission. It certainly does not mean to read law books casually, for amusement or general instruction, nor in the desultory manner in which Isaac L. Benson appears by the testimony to have read. The learned master was right in holding that one who, although he has registered as a student and read for a year or more, has long since abandoned all intention of being admitted to practice, cannot properly be said either to be reading law or to have read law.

Concerning Paul A. Benson, who was a student at law at the time of the testator's death, there appears to be no dispute, as he has fulfilled all the conditions of the will; but as to the right of the other nephews, J. B. Benson and J. A. Davis, who had read law and been admitted to practice before the tes-

tator's death, to participate in the distribution, we are of opinion that the learned judge erred in setting aside the report of the master. The testator undoubtedly meant to create a class of such of his nephews as should read law, and by " read law " he meant " become lawyers." The time at which they should do so does does not seem to have been any part of his plan. The rule that a will speaks from the time of the testator's death must, like all rules of construction, yield to a manifest intention to the contrary. Indeed, if that rule were allowed in this case, the only one whose position would be shaken by its application would be the appellee, in whose behalf it is so strenuously urged; for at the time of the testator's death, when the class must be ascertained, he was the only one of the three nephews who had not completed his studies, been admitted to the bar, and " read law " within the meaning of those words as we have construed them. But we take it that the application of that rule is unnecessary, for in the face of such words as " not to be sold, no—rather to be burned," which clearly indicate the testator's desire that his library should remain in the possession of his relatives for their own personal use, it would be unreasonable to adopt a construction which would limit the class of beneficiaries either to such of his nephews as should have completed their studies at the time of his death or to such as should still be reading their preparatory course at that time.

In view of this construction the testator's nephews J. B. Benson and J. A. Davis are properly within the class which the testator contemplated at the time of making the will, and are therefore entitled to their equal distributive shares in the testator's law library with the other nephew, P. A. Benson.

The decree of the orphans' court is reversed and set aside at the cost of the appellee, and the record is remitted in order that a decree may be entered in accordance with this opinion.