ATWOOD et al. v. RHODE ISLAND HOSPITAL TRUST CO. et al.

(Circuit Court of Appeals, First Circuit. January 14, 1921. On Rehearing. October 14, 1921.)

No. 1479.

1. **Wills ⟨key⟩267—Beneficiary having interest antagonistic to others necessary party to suit against trustee to avoid gift to trustee.**

   The interest of the trustee in a suit to have declared void a clause of a will adding to the principal of the trust theretofore created by testator is the same as the beneficiaries', except one whom testator attempted to strike out as a beneficiary under the trust, so that, the trustee being a defendant, the beneficiaries other than the one attempted to be stricken are not indispensable, though proper, parties; but such one must be made a party.

2. **Courts ⟨key⟩343—Necessary defendant may be joined by amendment, if not ousting jurisdiction.**

   An indispensable defendant to a suit may be added by amendment, if her residence be such that she can be added as a party defendant without ousting the court of jurisdiction; otherwise, the suit must be dismissed.

On Rehearing.

3. **Equity ⟨key⟩96—Presence of necessary party not indispensable for federal court proceeding as to the other parties with suit to avoid clause of will.**

   Under the rule that a federal court, without service or appearance of a person beyond the court's jurisdiction, ordinarily considered a necessary party to the litigation, may entertain jurisdiction and proceed with the cause, and enter a decree that will be binding on the parties before it, if the decree can be so framed as not to prejudice the rights of the absent party and do justice as between those before the court, it will do so in a suit to declare void a clause of a will adding to the principal of a trust; any interest of the absent party being an amount certain, which can be protected by the decree providing for retention of that amount by the executor, or for security being given to him.

4. **Wills ⟨key⟩669—Devise to existing trust created by testator void, where under trust deed trustor could thereafter change disposition by trustee.**

   Clause of will, adding to the principal of trust theretofore created by testator by deed of trust, under which the trustee was to dispose of the property to such persons and in such proportions as the trustor had instructed or should thereafter instruct, is void, as attempting to prospectively create for testator power to dispose of his property by an instrument not duly executed as a will.

   Bingham, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Suit by Kate Atwood and another against the Rhode Island Hospital Trust Company and others. From a decree dismissing the bill (264 Fed. 360), plaintiffs appeal. Reversed and remanded.

See, also, 255 Fed. 162.

Lyman K. Clark, of Boston, Mass. (Warren H. Atwood of Ayer, Mass., on the brief), for appellant Atwood.

Herbert Parsons and William E. Carnochan, both of New York City (William R. Harvey, of Newport, R. I., on the brief), for appellant Boal.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

. William R. Tillinghast, of Providence, R. I. (James C. Collins, Harold B. Tanner, and Tillinghast & Collins, all of Providence, R. I., on the brief), for appellee Rhode Island Hospital Trust Co.

Eugene A. Kingman, of Providence, R. I. (Kirk Smith and Edwards & Angell, all of Providence, R. I., on the brief), for appellee Metropolitan Museum of Art of the City of New York.

Herbert Barry, of New York City, and Frank G. Easton, of Providence, R. I., for appellees Andrews and another.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. This is a proceeding in equity, in which it is sought to have the residuary clause of the will of Theodore M. Davis declared inoperative and void. Kate Atwood, a resident of Massachusetts and a half sister of the testator, brings the suit in her individual capacity and as executrix of the estate of Gertrude Galloway, a sister of the testator. Theodore Davis Boal, a resident of Pennsylvania and executor of the will of Annie B. Davis, widow of the testator, is also a party plaintiff.

The bill originally was brought against the Rhode Island Hospital Trust Company, a Rhode Island corporation, as administrator with the will annexed and as trustee under a deed of trust made by Mr. Davis and bearing date August 14, 1911. Afterwards the Metropolitan Museum of Art, a New York corporation, Emma B. Andrews, a resident of Rhode Island, and Elizabeth A. Price, a resident of New York, intervened as defendants and by the direction of the court Annie Ghio, Margaret Lafarge, and Andrew Dwyer, all residents of Rhode Island and beneficiaries under the trust deed, were made defendants.

Mr. Davis resided at Newport, Rhode Island. August 14, 1911, he signed a trust agreement in which he made the Rhode Island Hospital Trust Company, trustee. August 16, 1911, he delivered the trust deed and securities of more than $2,000,000 in value to the Trust Company, and August 17, 1911, the Trust Company signified in writing its acceptance of the property and agreed to carry out the trust.

Under the terms of the trust the trustee was to manage the property, and pay the net income to Mr. Davis during his life, and upon his decease convert a sufficient amount of it into cash and pay forthwith certain sums to designated beneficiaries. The remainder of the trust estate, not required for the payment of certain benefits and annuities, was to be held in trust to pay the net income to Mrs. Davis and Mrs. Andrews. Upon the decease of the survivor the trustee was directed to divide the principal of the remaining trust estate into equal parts, and to pay over said parts, free of all trusts, to certain persons designated in the deed of trust, comprising about 30 in all. In the deed Mr. Davis reserved the right at any time during his life to revoke "any or all of the trusts herein declared," and "add to, annul, change, or modify in any respect whatsoever any of the trusts or powers hereby created or conferred."

On the same day that he signed the trust deed, August 14, 1911, but subsequent to its execution, Mr. Davis executed his will, the ninth

or residuary clause of which is in question. October 4, 1911, he executed a codicil to his will in which, after making certain modifications, he confirmed his will except as therein modified. October 5, 1911, which was the day after the execution of the codicil, he added four beneficiaries to the trust, giving them sums varying from $5,000 to $15,000 and amounting in the aggregate to $35,000. October 17, 1913, he made a further modification of the trust instrument by adding a new beneficiary, with a gift of $5,000, and canceling the provision made in the original trust deed of $3,000 to Amelia Burgnon. Neither of these modifications was executed as required by the statute of wills.

In the residuary clause of his will the testator provided as follows:

"Ninth: I give, devise and bequeath all the remainder of the property, real and personal, of which I die possessed or over which I have any power of disposition, including any of the foregoing gifts which shall fail for any reason, but excepting the remainder in my real estate in said Newport after the decease of my said wife and the said Emma B. Andrews, to my said executors, or any duly appointed administrator of my estate, in trust nevertheless, to convert the whole of said property into cash as soon as reasonably possible, with power to sell the same or any part or parts thereof at either private or public sale, and the net proceeds of such sale or sales to pay over to the said Rhode Island Hospital Trust Company to be held, managed and disposed of as a part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate and property; and the receipt of said Trust Company shall be a full discharge to my said executors or administrators relieving them from all further liability or accountability in respect thereof. And I devise to the said Rhode Island Hospital Trust Company after the deaths of my said wife and the said Emma B. Andrews the estate in said Newport hereinbefore given to them for their lives, but in trust nevertheless for said Trust Company to convert said estates into cash as soon as reasonably possible after it becomes entitled to the possession of said estates, * * * and to add the net proceeds of any such sale or sales to the principal of the trust estate and property then held by it under the trusts theretofore created by me, and to divide and distribute said net proceeds to the same persons and in the same proportions as they are entitled to the principal of my said trust estate under the terms of said trusts. * * *"

In the court below it was held that the interest of the Rhode Island Hospital Trust Company in the litigation was identical and common with that of the beneficiaries under the trust deed, and that the same was true as to the Metropolitan Museum of Art, so far as it could be said to have any interest; that, this being so, neither the Metropolitan Museum of Art nor all the beneficiaries were indispensable parties; that the beneficiaries residing within the jurisdiction of the court were proper parties, and, as such, might be joined in accordance with rule 38 (198 Fed. xxix, 115 C. C. A. xxix) to defend for all the beneficiaries as a class.

We think this ruling was correct, except in the particular hereinafter considered.

[1, 2] It is urged that the ruling was erroneous, in that Amelia Burgnon, who was made one of the beneficiaries under the trust as originally constituted, and whose name, on October 17, 1913, was stricken from the list by Mr. Davis, is an indispensable party to the litigation; that her interest is not common with that of the Hospital Trust Company,

either as administrator or as trustee, nor with the interest of the other beneficiaries; that her interest is antagonistic to those of all the other parties and especially to the interests of the other beneficiaries, for if she is entitled to receive the $3,000 which the trust deed gives her, the interests of the other beneficiaries will be to that extent lessened.

If the contention of the Hospital Trust Company in its capacity as trustee and administrator should be upheld, as it was upheld by the decision of the court below, Amelia Burgnon would be precluded from receiving her gift of $3,000 because her rights would be determined by the trust instrument as a nontestamentary disposition of Mr. Davis' property.

On the other hand, if the will is construed as speaking from the date of the codicil, and the trust deed can be said to be sufficiently referred to in the residuary clause as an existing instrument, so as to be incorporated therein, it would seem that, inasmuch as the trust deed was in existence at the time the will was executed and confirmed by the codicil and Amelia Burgnon was named as beneficiary in the deed, she might be entitled to the $3,000 given to her, as a testamentary disposition, the gift not having been revoked in the manner provided for revoking testamentary dispositions. If, however, the trust deed should not be found to be incorporated in the residuary clause of the will, then Amelia Burgnon would not be entitled to the gift of $3,000 unless she could show that the trust deed, being executed with all the formalties required by the statute of wills of Rhode Island, constituted a component part of the will and as such entitled her to participate as a beneficiary, the gift to her not having been revoked as required by law.

As the interest of Amelia Burgnon is practically in every aspect antagonistic to the interests of the other parties to the litigation, we regard her as an indispensable party to the proceeding. The record does not show where she resides. If her residence is such that she may be added as a party defendant without ousting the court of jurisdiction, she may be made a party by amendment; otherwise, the proceeding must be dismissed.

The decree of the District Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellants.

### On Rehearing.

ANDERSON, Circuit Judge. Since our opinion in this case was handed down, on January 14, 1921, a rehearing has been had upon the question whether, in the absence of Amelia Burgnon, a decree may be so framed as to do justice between the parties now before the court without injuriously affecting her rights. This question was not presented at the previous hearing. It has now been called to our attention that the record discloses that Amelia Burgnon is not a resident of Rhode Island and is without the jurisdiction of the court, and it is conceded that she is probably now residing in France.

If Amelia Burgnon could be regarded as a member of a class and be said to be sufficiently represented by the trustee and the other beneficiaries, who were made parties to the suit as to the question whether

Mr. Davis died testate or intestate as to the residue of his estate, then there would seem to be no question as to the jurisdiction of the court to proceed to judgment and enter a decree that would be binding upon the trustee and all the beneficiaries, including Amelia. Supreme Tribe of Ben Hur v. Cauble et al., 255 U. S. 356, 41 Sup. Ct. 338, 65 L. Ed. ——, decided by the Supreme Court, March 7, 1921. But in our previous decision it was held that Amelia Burgnon was not sufficiently represented by the trustee and the other beneficiaries, so that the court could proceed to judgment and enter a decree that would be binding upon her, that her interests were antagonistic to those of the other beneficiaries, and that the trustee occupied an inconsistent position as between Amelia and the other beneficiaries.

[3] The question raised by the motion for rehearing, therefore, is whether the court may entertain jurisdiction and proceed with the cause in her absence, and enter a decree that will be binding upon the parties before it. The rule of the federal courts is that it may do so, if it can so frame its decree as not to prejudice the rights of the absent party and do justice as between those before the court (Waterman v. Canal-Louisiana Bank & Trust Co., Executor, 215 U. S. 33, 49, 30 Sup. Ct. 10, 54 L. Ed. 80); that if this may be done the absent party, though ordinarily considered a proper or necessary party to the litigation, is not an indispensable party, in the sense that the court is without jurisdiction of the cause.

In Waterman v. Canal-Louisiana Bank & Trust Co., supra, it appeared that Frances E. Waterman, a citizen of Illinois, brought suit in the Circuit Court of the United States for Louisiana against the bank, executor of the will of Caroline S. Tilton, against seven charitable institutions, and against Robert Waterman and Frederick Waterman, all citizens of Louisiana. In the bill it was alleged:

That by her will Caroline S. Tilton bequeathed to Robert Waterman $3,000, to said Robert Waterman and his wife 15 premium bonds, to Frederick Waterman $3,000, and to Frederick Tilton Davis $1,000 and the whole series of No. 5963 premium bonds; that said Caroline died July 6, 1908; that the executor duly proved the will in the probate court for Louisiana, undertook the executorship, and possessed itself of the personal estate of the testatrix to an amount more than sufficient to discharge her debts, funeral expenses, and legacies.

That the complainant was the sole surviving niece of said Caroline; that Robert and Frederick Waterman and Frederick Tilton Davis were her sole surviving nephews; that there were no other persons within as near a degree of kinship, and that Frederick Tilton Davis resided in Alabama, outside the court's jurisdiction; that Robert and Frederick Waterman and Frederick Tilton Davis had received their legacies, and by so doing had renounced the succession of said Caroline, and also renounced all their rights as heirs at law, and became estopped and debarred from claiming any portion of the residue of the estate because of certain provisions of the will, stating them; that by reason of the renunciation and estoppel the complainant became the sole heir at law of said Caroline, and as such entitled to the shares

which would have gone to Frederick and Robert Waterman and Frederick Tilton Davis by right of accretion.

That the will bequeathed seven special legacies, among which were one to the Home for Insane of $3,000, and one to the Christian Woman's Exchange of $1,000; that after the satisfaction of these special legacies, and after payment of all costs and expenses in the settlement of the estate, the testatrix directed that the residue, if any remaining, should be divided between the seven charitable institutions pro rata in proportion to the amount of the legacies made to them respectively; that at the time of the making of the will and at the death of the testatrix there was no such institution or corporation in existence known as Home for Insane, nor was the testatrix capable of incorporating any such institution under her will; that the special legacy of $3,000 to the Home for Insane and its pro rata share of the residue remained undisposed of, because of the facts stated, and devolved upon complainant as sole heir and next of kin; that the Christian Woman's Exchange was not entitled to share in the residue, because the bequest to it was not a charitable bequest and the Exchange was not one of the institutions mentioned in the will to share in the residue.

The prayers were: (1) That the legacy to the so-called Home for Insane and also the interest of said legatee in the residuum be declared to have lapsed because of the nonexistence of said legatee; (2) that Robert and Frederick Waterman had abandoned their rights as heirs in the lapsed legacy in favor of the so-called Home for Insane; (3) that the complainant alone was entitled to the special legacy bequeathed to the so-called Home for Insane, and to its proportionate share in the residue, and that the bank, the executor, pay over to the complainant the lapsed legacy together with its proportionate share in the residuum; (4) that it be decreed that the Christian Woman's Exchange was not a charitable institution or entitled to participate in or receive any portion of the residue.

In the opinion it was pointed out that the complainant did not seek to set aside the prior regular probate of the will, but to have her interest in the legacy alleged to have lapsed and in the residuary portion of the estate established, and that the controversy was within the equity jurisdiction of the courts of the United States.

As to the question whether Frederick Tilton Davis, the nonresident legatee, was an indispensable party to the suit, and in his absence a dismissal of the cause would be required for want of jurisdiction in the court to proceed without him, the court said:

"The relation of an indispensable party to the suit must be such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of such absent party. 1 Street's Fed. Equity Practice, § 519.

"If the court can do justice to the parties before it without injuring absent persons, it will do so, and shape its relief in such a manner as to preserve the rights of the persons not before the court. If necessary, the court may require that the bill be dismissed as to such absent parties, and may generally shape its decrees so as to do justice to those made parties, without prejudice to such absent persons. Payne v. Hook, 7 Wall. 425."

And, applying the above rule to the facts of that case, the court held:

"That the presence of Frederick T. Davis as a party to the suit is not essential to the jurisdiction of the federal court to proceed to determine the case as to the parties actually before it. In other words, that while Davis is a necessary party, in the sense that he has an interest in the controversy, his interest is not that of an indispensable party without whose presence a court of equity cannot do justice between the parties before it, and whose interest must be so affected by any decree to be rendered as to oust the jurisdiction of the court."

See, also, on this subject, Barney v. Baltimore City, 6 Wall. 280, 18 L. Ed. 825; Horn v. Lockhart, 17 Wall. 570, 21 L. Ed. 657; Sutton v. English, 246 U. S. 199, 38 Sup. Ct. 254, 62 L. Ed. 664; United States v. Allen, 179 Fed. 13, 21, 103 C. C. A. 1; General Inv. Co. v. Lake Shore & M. S. Ry. Co., 250 Fed. 160, 171, 162 C. C. A. 296; Stevens v. Smith, 126 Fed. 706, 61 C. C. A. 624; Grigsby v. Miller (D. C.) 231 Fed. 521, 523.

If the rule of law stated in Waterman v. Canal-Louisiana Bank and Trust Co. was applicable to the facts of that case, then a fortiori is it applicable to the facts in the case before us, for here the interest, if any, of Amelia Burgnon in the residue, is fixed at $3,000, while in the Waterman Case it would seem that the interest of Frederick T. Davis might be found to be a quarter, a third, a half, or perhaps the whole of the lapsed legacy, and a like proportion of the accretion from the residue, depending upon whether all the other heirs, or some one or more of them, had lost their rights in the lapsed legacy and its accretions.

Again, unless it can be said that Frederick T. Davis was sufficiently represented by the complainant in the issue with the seven charitable organizations that were to share in the residue, as to whom it was open to assert that the legacy of $3,000 to the Home for Insane never had any existence and fell with its accretions into the residue to swell the shares going to them, it would seem that Frederick T. Davis was an indispensable party to the issue as to whether Caroline died intestate as to that legacy, in which case it would go to the heirs at law, or whether she died testate and it fell into the residue to be divided between the seven charitable organizations, among whom the residue was to be proportionately distributed, unless it could be said that, as to that issue, the decree could also be so framed as not to prejudice his rights.

The interest, if any, of Amelia Burgnon in the residue, is $3,000, and we think the court may so fashion its decree as to protect her rights in case the complainants should prevail, by directing the retention of a sufficient sum in the hands of the executor to be adjudicated in another suit, or by requiring that the executor be given adequate security to protect any interest which she may have.

In view of the foregoing, our previous order of January 14, 1921, is vacated, and we proceed to consider the case on its merits.

The discussion, not only in the elaborate opinion of the District Judge, but in the briefs and oral arguments of counsel, has taken a wide range and evoked a wealth of learning. But the real case seems

to us to fall within narrow compass. On analysis, it is apparent that there is and can be no substantial difference of opinion as to the construction of the ninth paragraph, contended by the plaintiffs to be void for indefiniteness. Abbreviated, it provides:

"I give * * * the remainder * * * to my said executors, * * * with power * * * to sell * * * and pay * * * the proceeds over to the * * * Trust Company, to be held, managed and disposed of as a part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate. * * *"

Concerning this paragraph there is general agreement:

(1) That it does not incorporate by reference any existing trust instrument.

This case, therefore, is not within the doctrine of Newton v. Seaman's Friend Society, 130 Mass. 91, 39 Am. Rep. 433. This point requires no further comment.

(2) That, unexplained by parol evidence, it is manifestly void for indefiniteness.

(3) That, interpreting this paragraph in the light of the parol evidence admitted below as to the inter vivos trust, the paragraph is to be construed as covering trust provisions then and thereafter made by the testator.

The first question that arises, therefore, is as to the admissibility of parol evidence concerning the trusts. We regard it as far from clear that the weight of argument and of authority is not against the admissibility of such evidence. See Olliffe v. Wells, 130 Mass. 221; Booth v. Baptist Church, 126 N. Y. 215, 246, 28 N. E. 238; Wigmore on Evidence, §§ 2407, 2472, 2473; Lewis v. Douglass, 14 R. I. 604; Rhode Island Hospital Trust Co. v. Bradley, 41 R. I. 174, 103 Atl. 486; Wilkins v. Allen, 18 How. 385, 15 L. Ed. 396; Weatherhead v. Baskerville, 11 How. 329, 13 L. Ed. 717; Patch v. White, 117 U. S. 210, 6 Sup. Ct. 617, 710, 29 L. Ed. 860; Gilmer v. Stone, 120 U. S. 586, 7 Sup. Ct. 689, 30 L. Ed. 734; Best v. Berry, 189 Mass. 510, 75 N. E. 743, 109 Am. St. Rep. 651; Jones v. Bennett, 78 N. H. 224, 99 Atl. 18; Perkins v. Mathes, 49 N. H. 107; Stratton v. Stratton, 68 N. H. 582, 44 Atl. 699; Cotton v. Smithwick, 66 Me. 360; Golder v. Chandler, 87 Me. 63, 70, 32 Atl. 784; University of North Wales v. Taylor (1908), L. R. Prob. 140; Allen v. Maddock, 11 Moore, P. C. 427, 454; Bryan v. Bigelow, 77 Conn. 604, 613, 614, 60 Atl. 266, 107 Am. St. Rep. 64; Reynolds v. Reynolds, 167 App. Div. 90, 152 N. Y. Supp. 661; Id., 224 N. Y. 429, 121 N. E. 61; Turner's Appeal, 48 Mich. 369, 12 N. W. 493; Glass v. Glass, 127 Iowa, 646, 103 N. W. 1013; Curley v. Lynch, 206 Mass. 289, 92 N. E. 429.

Compare Baskett v. Loge, 23 Beav. 138 (1856); Nightingale v. Phillips, 29 R. I. 175, 72 Atl. 220; Eustace v. Robinson, 7 L. R. Ir. 83 (1880); In re North, 76 L. T. 186 (1897); In re Walpole's Marriage Settlement, 1 Ch. 928 (1903); In re Beaumont, 1 Ch. 325 (1913); Dexter v. Harvard College, 176 Mass. 192, 198, 57 N. E. 371 (1900); Jackson v. Babcock, 12 Johns. (N. Y.) 389; Berry v. Dunham, 202 Mass. 133, 138, 88 N. E. 904; Metcalf v. Sweeney, 17 R. I. 213, 21

Atl. 364, 33 Am. St. Rep. 864; Abbott v. Lewis, 77 N. H. 94, 88 Atl. 98; Ginter v. Shelton, 102 Va. 185, 45 S. E. 892; In re Becker, 39 Misc. Rep. 756, 80 N. Y. Supp. 1115; In re Klein's Estate, 35 Mont. 185, 88 Pac. 798; Clarke v. Treasurer & Receiver General, 226 Mass. 301, 115 N. E. 416, L. R. A. 1917D, 800; Shepard v. Shepard, 57 Conn. 24, 17 Atl. 173; In re Benson's Estate, 169 Pa. 602, 32 Atl. 654; In re Bacon's Estate, 140 Wis. 589, 123 N. W. 262; Knowles v. Knowles, 132 Ga. 806, 65 S. E. 128; McKinley v. Martin, 226 Pa. 550, 75 Atl. 734, 134 Am. St. Rep. 1076; Markham v. Hufford, 123 Mich. 505, 82 N. W. 222, 48 L. R. A. 580, 81 Am. St. Rep. 222; Dennis v. Holsapple, 148 Ind. 297, 47 N. E. 631, 46 L. R. A. 168, 62 Am. St. Rep. 526; Lear v. Manser, 114 Me. 342, 96 Atl. 240; Reinheimer's Estate, 265 Pa. 185, 108 Atl. 412; Harriman v. Harriman, 59 N. H. 135; Jay v. Lee, 41 Misc. Rep. 13, 83 N. Y. Supp. 579.

[4] But we think it unnecessary for us to reach a conclusion on this point; for, assuming it determined in the respondents' favor, we are clear that the plan disclosed in the will and the inter vivos trust together is obnoxious to the statute of wills, falling plainly within the condemnation of the rule pungently stated by Sir George Parker in Johnson v. Ball, 5 De G. & Sm. 85, 91, where he said:

"A testator cannot by his will prospectively create for himself a power to dispose of his property by an instrument not duly executed as a will or codicil."

This is exactly what Davis undertook to do as to the residue of his testamentary estate.

The case is on all fours with Olliffe v. Wells, 130 Mass. 221, and the other numerous cases to the same effect.

Reading the ninth clause of the will in connection with the trust instrument, which contains full power of revocation and modification, Davis said:

"I give the residue of my estate to said Trust Company to be disposed of to such persons and in such proportions as I may have instructed or shall hereafter instruct said Trust Company."

Such instructions might be given in writing or orally. A cablegram from him sent from Egypt would have been legally sufficient to change the destination of the entire trust fund, including the increment from his testamentary estate under the residuary clause. Indeed, the defendants concede that oral instructions would, as matter of law, have been equally effective; that writings are of no importance, except as persuasive evidence. Nor is the fact that in this case the trust fund was upwards of $2,000,000, and the residue of the testamentary estate by comparison small, of any import; the plan devised would have been equally effective if the inter vivos trust had been $5,000, divisible under the trust instrument into fractions to various named persons (and subject to change or modification at any time, orally or in writing), and the augmentation under the will had been $5,000,000.

Manifestly, then, the real disposition of this residuary estate is made, not by the will, but by the shifting provisions in the trust instrument. No amount of discussion or elaboration could make plainer

the absolute destruction by such plan of the safeguarding provisions in the statute of wills.

Learned counsel for the respondent Trust Company recognize that the case cannot be distinguished from Olliffe v. Wells, and attack Olliffe v. Wells as bad law. We do not so regard it. In our view, the decision in Olliffe v. Wells is sound in principle and supported by the overwhelming weight of authority. Hammond v. Hammond, 234 Mass. 554, 125 N. E. 686; Minot v. Attorney General, 189 Mass. 176, 75 N. E. 149; Bailey v. Wood, 211 Mass. 37, 43, 97 N. E. 902, Ann. Cas. 1913A, 950; Davison v. Wyman, 214 Mass. 192, 195, 100 N. E. 1105; Blunt v. Taylor, 230 Mass. 303, 119 N. E. 954; Payton v. Almy, 17 R. I. 605, 24 Atl. 101; Fitzsimmons v. Harmon, 108 Me. 456, 81 Atl. 667, 37 L. R. A. (N. S.) 400; Haskell v. Staples, 116 Me. 103, 100 Atl. 148, L. R. A. 1917D, 819; Amherst College v. Ritch, 151 N. Y. 282, 332, 45 N. E. 876, 37 L. R. A. 305; Reynolds v. Reynolds, 224 N. Y. 429, 434, 121 N. E. 61; Condit v. Reynolds, 66 N. J. Law, 242, 49 Atl. 540; Magnus v. Magnus, 80 N. J. Eq. 348, 84 Atl. 705; Smith v. Smith, 54 N. J. Eq. 1, 32 Atl. 1069; Sims v. Sims, 94 Va. 580, 27 S. E. 436, 64 Am. St. Rep. 772; Heidenheimer v. Bauman, 84 Tex. 174, 19 S. W. 382, 31 Am. St. Rep. 29; In re Davis (D. C.) 112 Fed. 129.

Our views are also confirmed by the recent decision of the Court of Appeals in the Eighth Circuit, Circuit Judges Sanborn and Hook, and District Judge Amidon, in Thomas v. Anderson, 245 Fed. 642, 158 C. C. A. 70, holding invalid a gift of a residue to the executor "to * * * dispose of * * * following as nearly as may be possible for him to do, any instructions, directions or requests that I may hereafter give, make or request." That learned court held that this trust was "too indefinite for enforcement," citing as the cases which presented the closest analogies, the following: Christman v. Roesch, 132 App. Div. 22, 116 N. Y. Supp. 348; Ingram v. Fraley, 29 Ga. 553; McCurdy's Appeal, 124 Pa. 99, 16 Atl. 626, 10 Am. St. Rep. 575; Briggs v. Penny, 3 De Gex & Sm. 525; Schmucker's Estate v. Reel, 61 Mo. 592; Condit v. Reynolds, 66 N. J. Law, 242, 49 Atl. 540; Davison v. Wyman, 214 Mass. 192, 100 N. E. 1105; Gross v. Moore, 68 Hun, 412, 22 N. Y. Supp. 1019; Hughes v. Fitzgerald, 78 Conn. 4, 60 Atl. 694.

But it is contended that this case can be distinguished from Olliffe v. Wells, because, in the language of Denio, C. J., in Langdon v. Astor's Ex'rs, 16 N. Y. 9, the trust in this case is not "indifferent in itself and having no pertinency, except its effect upon his testamentary dispositions."

Applying this somewhat abstruse and confusing language to this case, we understand it to mean that, because the trustee named in Mr. Davis' will had, with reference to some of Mr. Davis' property, functions to perform other than those created by the will alone, the gift to such trustee is thereby made valid; in other words, that because the respondent Trust Company had, apart from the provisions in the will, a trust relationship to Davis, the bequest to it became valid, although it would have been invalid if this Trust Company had stood

towards the testator as Wells stood in Olliffe v. Wells, with no trust relationship except that arising under the will itself.

In our view, this is a distinction without any legal difference. The real question is whether the residue of this estate was disposed of by Mr. Davis' will. Plainly it was not. No additional sanctity attaches to this trust because as to the property vested in the same trustee by Mr. Davis during his lifetime it had duties enforceable either in a court of equity or to the performance of which it was bound by contract. No multiplication of words or refinements can alter the result above stated —that Davis had by this plan sought "prospectively to create for himself the power to dispose" of property vested in him at the time of his death by instruments not executed in accordance with the statute of wills.

It seems equally clear to us that this case does not fall within the rule which permits a testator to determine to some degree the objects of his testamentary bounty by his own subsequent conduct, as, for instance, in cases of gifts to servants in the employ of the testator at his decease, or to surviving partners, or to the persons or institutions caring for the testator in his last sickness. It is, of course, true that the volition of the testator as to who shall be his servants or partners, or final attendants, is a factor in selecting the objects of his testamentary bounty. But it is not the only factor. The volition and acts of such legatees are also factors in determining whether the designated relationship shall or shall not exist at the time of the testator's death. There is a great practical as well as legal difference between such relationship—arising "in the ordinary course of his affairs or in the management of his property"—and a relationship which arises solely out of the bounty-giving volition of the testator. The distinction, however fine, is well recognized in the authorities, and we cannot hold ourselves at liberty to disregard it. Dennis v. Holsapple, 148 Ind. 297, 47 N. E. 631, 46 L. R. A. 168, 62 Am. St. Rep. 526; Lear v. Mansar, 114 Me. 342, 96 Atl. 240; Harriman v. Harriman, 59 N. H. 135.

These cases, as well as cases involving advancements (see Langdon v. Astor's Ex'rs, 16 N. Y. 9; Lawrence v. Lindsay, 68 N. Y. 108; Moore's Case, 61 N. J. Eq. 616, 47 Atl. 731; Robert v. Corning, 89 N. Y. 225; Harris v. Harris' Estate, 82 Vt. 199, 72 Atl. 912; Coyne v. Boyce, 78 Md. 22, 26 Atl. 1021; Blackstone's Appeal, 64 Conn. 414, 30 Atl. 48; Holmes v. Coates, 159 Mass. 226, 34 N. E. 190; Sanford v. Raikes, 1 Merivale, 646, 653), undoubtedly involve gifts dependent in part upon future acts of the testator. But we agree with counsel for the plaintiff that none of them sustains the proposition that a testator may make a valid testamentary provision incorporating an extrinsic trust created by him and subject to change as his testamentary desires may change, so that every alteration, oral or written, of the trust instrument is really a change in the disposition of his testamentary estate.

Compare In re Sexton, 162 Ill. App. 214, 221; Hartwell v. Martin, 71 N. J. Eq. 157, 63 Atl. 754.

The decisions in Condit v. De Hart, 62 N. J. Law, 78, 40 Atl. 776, and Matter of Piffard, 111 N. Y. 410, 18 N. E. 718, 2 L. R. A. 193,

seem to us to rest on the principle of incorporation by reference, admitted by learned counsel for the respondent Trust Company not to be applicable to the instant case.

The result is that, on principle and authority, we find ourselves constrained to conclude that the residue of the personal property of Theodore M. Davis, held by the respondent Trust Company, is—subject to proper proceedings in the Probate Court as prayed for, and subject also to the contingent provision hereinabove indicated safeguarding the rights, if any, of Amelia Bergnon—held under a resulting trust for the plaintiffs.

The decree of the District Court is reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion, with costs for the appellants.

BINGHAM, Circuit Judge (dissenting). As to the question of jurisdiction I agree with the opinion of the majority, but as to the merits of the case I am unable to do so.

The material questions involved in a decision of the merits are: (1) Whether the testator, in the ninth clause of his will, where he referred to the principal of the estate and property held by the Trust Company in trust, referred to it as it existed at the time he republished his will by the codicil, or as it should exist at his decease; and (2) if the latter, whether the circumstances are such that parole evidence is admissible to identify the persons the testator intended should take the residue and define their shares, inasmuch as the facts referred to— the persons who should take the principal of the trust estate and their shares therein—might depend upon or be the result of future acts of the donor (the testator) of the trust.

If the testator, by the ninth clause of his will, referred to the principal of the estate and property in the hands of the Trust Company as it existed at the time he republished his will, to identify the persons and define the shares which he intended they should take, there can be no doubt but that parol evidence would be admissible for this purpose, as the reference in the will would be to facts then in existence.

And there would be no reasonable doubt as to the admissibility of the evidence if the principal of the estate and property held in trust and referred to in the will was created or to be created by a stranger and as it should exist at Mr. Davis' death, for in such case the existence of the fact or facts referred to in the will would not depend upon the future act or acts of the testator in the establishment of the trust. Harriman v. Harriman, 59 N. H. 135.

It is only in case the ninth clause refers to the principal of the estate and property held in trust as it should exist at the time of the testator's decease that any debatable question can arise, as the extrinsic fact or facts referred to in the will may be the result of future acts of the donor in changing the donees or their shares in the trust fund; the donor being also the testator under the will. In such case there can be no objection to the introduction of the extraneous evidence, unless it can be said that to do so would be to contravene the statute of wills.

The question is a fairly close one, and its answer depends largely upon the decisions of the courts through a long series of years, in construing the statute and applying it in cases involving facts of the same character or so similar that they cannot reasonably be differentiated.

My Associates in their opinion take the position that Mr. Davis did not dispose of the residue of his estate by the ninth clause of his will, but undertook by that clause to reserve to himself a power to dispose of it as he should in the future direct by a written instrument other than a will or codicil, and therefore died intestate as to the residue. That this is so appears from the language of the opinion, where they state that the "disposition of this residuary estate is made, not by the will, but by the shifting provisions in the trust instrument," that "a testator cannot by his will prospectively create for himself power to dispose of his property by an instrument not duly executed as a will or codicil," that "this is exactly what Davis undertook to do as to the residue of his testamentary estate," and that "the case is on all fours with Olliffe v. Wells, 130 Mass. 221, and the other numerous cases to the same effect." The error of the majority, as I view it, lies in their assumption that Mr. Davis, by the language of the ninth clause of his will, undertook to reserve to himself power to dispose of the residue of his estate by a future instrument, when, as a matter of fact, there is no allusion in that clause of the will to an instrument, present or future, of any kind or description.

It will be seen by looking at the will that it does not refer to a trust instrument, but refers to a trust fund and the rights of the donees in that fund, and that it gives the residue of the estate to the same persons and in like shares as those who shall take the principal of the estate and property held under the trust. It is an absolute disposition—not a reservation of a power of disposal; and, if this is so, the question is one as to the admissibility of extraneous evidence to explain and make certain the language of the will and thus identify the persons who are to take the residue and define their shares.

Now let us look at the trust deed as it existed when the codicil was made and later when Mr. Davis died, and see whether it refers to the residue under the will or in any way undertakes to dispose of that residue. It can be stated without fear of contradiction that the trust deed never at any time or in any way referred to the residue of the estate under the will. Hence it is not even arguable that Mr. Davis intended to dispose of the residue under his will by the trust deed. As the trust deed does not undertake to dispose of the residue of Mr. Davis' estate, it is of no consequence whether that instrument, in the disposition of the inter vivos trust fund, is or is not a testamentary instrument. It is not and cannot be as to the residue under the will, for it does not undertake to dispose of it. It simply disposes of the trust fund deposited by the donor with the trustee during the donor's lifetime, and, under the law of Rhode Island and Massachusetts, would not be testamentary as to its disposition of that fund. Talbot v. Talbot, 32 R. I. 72, 103, 78 Atl. 535, Ann. Cas. 1912C, 1221; Stone v. Hackett, 12 Gray, 227.

There are vital distinctions between this case and that of Olliffe v. Wells. In Olliffe v. Wells the language of the will was:

"13th. To the Rev. Eleazer M. P. Wells, all the rest and residue of my estate, to distribute the same in such manner as in his discretion shall appear best calculated to carry out wishes which I have expressed to him or may express to him."

In that case the testatrix did not dispose of the residue of her estate by her will, for she did not undertake by the language used to disclose who her beneficiaries were, or state circumstances by which they might be identified and their shares ascertained. She simply undertook to reserve a future power of disposal and in a manner not authorized by law. Not having disposed of the residue of her estate by her will, the extraneous wishes which she had expressed or might in the future express to Rev. Mr. Wells relating to its disposition were necessarily testamentary, and, not having been set out in a subsequent will or codicil, no other conclusion could have been reached than that she died intestate as to the residue. To have received extraneous evidence of her wishes would have been to contravene the statute of wills. I do not question the correctness of the decision in that case. My position is that it has no application to the facts in this case, and belongs to a class of cases such as Johnson v. Ball, 5 De G. & Sm. 85, 91, and Thomas v. Anderson, 245 Fed. 642, 158 C. C. A. 70, relied upon by the majority of the court in their opinion.

The language of the ninth clause of the will is as follows:

"Ninth. I give, devise and bequeath all the remainder of the property, real and personal, of which I die possessed or over which I have power of disposition, including any of the foregoing gifts which shall fail for any reason, but excepting the remainder in my real estate in said Newport after the decease of my said wife and the said Emma B. Andrews, to my said executors, or any duly appointed administrator of my estate, in trust nevertheless, to convert the whole of said property into cash as soon as reasonably possible, with power for this purpose to sell the same or any part or parts thereof at either private or public sale, and the net proceeds of such sale or sales to pay over to the said Rhode Island Hospital Trust Company to be held, managed and disposed of as part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate and property; and the receipt of said Trust Company shall be a full discharge to my said executors or administrators relieving them from all further liability or accountability in respect thereof. And I devise to the said Rhode Island Hospital Trust Company after the deaths of my said wife and the said Emma B. Andrews the estate in said Newport hereinbefore given to them for their lives, but in trust nevertheless for said Trust Company to convert said estates into cash as soon as reasonably possible after it becomes entitled to the possession of said estates, hereby empowering said Trust Company in the discretion of its officers or committee having the charge of trust estates and with the approval in writing of the said Thomas L. Manson and Herbert Parsons or the survivor of them so long as both or either of them is living, to sell said estates from time to time at either private or public sale, and to add the net proceeds of any such sale or sales to the principal of the trust estate and property then held by it under the trusts theretofore created by me, and to divide and distribute said net proceeds to the same persons and in the same proportions as they are entitled to the principal of my said trust estate under the terms of said trusts; and no purchaser from my said executors or administrators, or from said Trust Company shall be under any obligation to inquire into the propriety or regularity of any such sale or sales or to

see to the application of the purchase moneys, but all transfers and conveyances from my said executors and administrators, and from said Trust Company, shall give to the purchaser as good, valid and sufficient titles to said properties, real and personal, as I die possessed of, without other act by the purchasers than the payment of the purchase moneys."

Returning to the first question presented by this case as hereinbefore stated: Did the testator by this provision of his will refer to the trust fund and rights of the donees therein as they existed at the time he executed his codicil and republished his will, or as they should exist at the time of his decease, to identify the persons who were to take the residue of his estate and define their shares? It seems to me that the reasonable and necessary construction of the language is that the testator intended to refer to the trust fund and rights of the donees as they should exist at the time of his decease for this purpose. He there states that the residue is to be paid—

"over to the said Rhode Island Hospital Trust Company to be held, managed and disposed of as a part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate and property."

It would seem that, as Mr. Davis' will was to take effect on his death, the reference in the will was to the trust fund as created by him in his lifetime and as it should exist at his death. And later in the same paragraph, in speaking of the Newport property, of which he had given the use to his wife and Emma B. Andrews during their lives and the life of the survivor, he states that the remainder in that Newport real estate shall go to the Trust Company as trustee to convert into cash and—

"to add the net proceeds of any such sale or sales to the principal of the trust estate and property then held by it under the trusts theretofore created by me, and to divide and distribute said net proceeds to the same persons and in the same proportions as they are entitled to the principal of my said trust estate under the terms of said trusts."

Clearly, as to this matter, the testator contemplated that his wife or Emma B. Andrews, one or both, would outlive him, which they did, and that the remainder in the real estate should be added to the trust estate created by him in his lifetime and as it existed at his death.

But the majority in their opinion maintain that by this paragraph the testator did not intend to refer to the inter vivos trust fund as an extraneous fact and as it should exist at the testator's death, to identify the beneficiaries in the residue under the will and define their shares, but to a trust deed as a paper or writing, thereby intending to refer to the trust deed as he had made it, or should make or change it after he executed his will or the codicil republishing it; and the reference being, according to their interpretation, to a future instrument, it was not, under the law, incorporated in and made a part of his will, and, being a future instrument that was not intended to be a will, that he died intestate as to the residue.

It is undoubtedly the law that if the reference in the ninth paragraph was to an existing paper, or one thereafter to be made by the testator and expressing his wishes as to whom and the shares in which the

residue of his estate should go, the instrument or paper would be testamentary in nature, and, if it was not, or by reason of its future character could not, be incorporated by reference in the will, would be inoperative as a testamentary disposition. This is the plain import of the decision in Olliffe v. Wells, supra, where the thirteenth clause of the will did not even refer to a memorandum, present or future, expressing the wishes of the testatrix. The reference there may have been to oral instructions, present or future. It was not to facts which should exist at the testatrix's decease and by which the beneficiaries described in her will might be identified, for her will did not undertake to describe any beneficiaries. Consequently, if there was any disposition of the residue of her estate, it was by the extraneous wishes which the testatrix had expressed or might afterwards express in some manner to Rev. Mr. Wells, which wishes, if they could be regarded as extraneous facts, would have no pertinency apart from a disposition of the residue under the will. Langdon v. Astor's Executors, 16 N. Y. 9, 25.

The remaining question, as I see it, is whether an extraneous fact referred to in a will, having pertinency in itself apart from any effect it may have upon some testamentary disposition of the testator, and which may depend upon the future act of the testator for its existence, can be shown by parol without contravening the provisions of the statute of wills. The question is not, as in many cases, whether the extraneous fact referred to, if introduced in evidence, will clearly identify the persons who are to take and define their shares, but whether such extraneous fact, having its origin in the future act of the testator, is testamentary and cannot be shown. The circumstance that the ninth clause of the will does not designate the beneficiaries by name does not militate against its efficacy, for it is and must be conceded that that clause contains language describing the beneficiaries by which their identity may be ascertained. As held by the court in Lear v. Manser, 114 Me. 342, 96 Atl. 240, it is not necessary that the beneficiaries be designated by name in the will; some other designation will suffice if it make certain the beneficiaries intended, and it is not necessary that the testator have in mind the particular individual, if the particular object of his bounty is ascertainable with certainty—if the person intended can be identified by the description given in the will, interpreted in the light of the extraneous fact or facts referred to.

As I understand the law, it is that an extraneous fact referred to in a will by which the intended object or objects of a testator's bounty may be identified can be shown in evidence to make certain those objects, and that this is so, even though the extraneous fact referred to may be the result of a future act of the testator, provided that future act is one of a business nature and has reason for its existence apart from any disposition of the property under the will. It cannot be said in this case that the deposit of securities of the value of $2,000,-000 by Mr. Davis with the Trust Company was not a business transaction and did not have pertinency in itself, apart from any disposition of property made by him in his will.

In Harriman v. Harriman, 59 N. H. 135, the devise of a farm, after the termination of a life estate, was to such person or persons as shall take care of and support A. H. and his wife (the life tenants) in their old age. In that case the fact by which the identity of the devisee was to be determined did not depend upon the future act of the testator, but upon the acts of third parties occurring after the testator had made his will and died, and during the old age of the life tenants, and it was held that the only question to be determined was one of identity; that, if no one fulfilled the conditions of the will, the devise failed, but if parol evidence disclosed a person complying with its conditions, then that person was entitled to hold the land under the will.

In Lear v. Manser, 114 Me. 342, 96 Atl. 240, the bequest was of a sum to the testator's executor in trust for "such person or persons, or to such institution as shall care for me in my last sickness." Here the person who was to care for the testator in his last sickness could be selected by him and might and probably did depend upon his future act in making the selection. But the court evidently did not regard his future act of selection as testamentary, but simply as presenting the question whether evidence could be introduced for the purpose of establishing the identity of the beneficiary. This act of the testator was one which had direct relation to making provision for his care in his last sickness, and incidentally lent aid to the language used in his will describing his beneficiary. It was held that the testator's intention was plain, if it could be effectuated consistently with the rules of law; that the trust sought to be established was a private one, and the question was whether there was a cestui que trust clearly identified or made capable of identification by the terms of the will creating the trust; that it was not necessary that the beneficiary should be designated by name in the will; that some other designation would suffice, if it made certain the beneficiary intended; and that it was not essential that the testator have in mind the particular individual, if the particular object of his bequest was ascertainable with certainty; and, as the person intended could be identified by the description given in the will, the gift did not fail.

In Reinheimer's Estate, 265 Pa. 185, 108 Atl. 412, the gift was of the residue "to the party or parties, their heirs and assigns forever, who may be farming my farm and taking care of me at the time of my death." Here, as in the previous case, the identity of the beneficiary depended upon the future acts of the testator in the selection of the person or persons who should work his farm and be caring for him at the time of his death. But those acts were not regarded as testamentary, for they related directly to making provision for working his farm and caring for him at the time of his death, though incidentally they made it certain who was intended by the language of his will to take the residue of his estate.

In Stubbs v. Sargon, 2 Keen, 255 (s. c., on appeal, 3 Myl. & Cr. 507, 510), certain land was given by will in trust to pay the rents to X. for life, and after her decease—

"in trust to dispose of and divide the same unto and amongst my partners, who shall be in partnership with me at the time of my decease, or to whom I may have disposed of my said business, in such shares and proportions as my said trustees shall think fit and deem advisable."

The testatrix, in her lifetime and after the execution of her will, disposed of her business to her former partner, Y., and the questions raised were (1) whether the devise was good within the meaning of the statute of wills, and (2) whether it was or was not void for uncertainty. It was argued that it was void for the reasons (1) that it was a declaration of intention to be completed by a future act unaccompanied by the formalities required by the statute of wills and was testamentary; and (2) that it was void for uncertainty, the object of the devise not being sufficiently defined. It was held that the future act of the testatrix in disposing of her business was not testamentary, that the beneficiary as described in the will could be identified by parol proof of the extraneous fact, and the gift thereby upheld.

In Abbott v. Lewis, 77 N. H. 94, 88 Atl. 98, the gift was—

"to the employees of the O. J. Lewis Mercantile Company who have been in the service of the house ten years and are so employed at the time of my death, ten thousand dollars, to be equally divided among them at the termination of this trust."

The O. J. Lewis Mercantile Company was a corporation of which the testator was the active manager and practically the sole owner. It is certain that the testator, during his lifetime, had it in his power to increase or diminish the number of employees, and say who should be employed in the service of the house, and by increasing or diminishing their number thereby increase or diminish the shares which the beneficiaries under his will would receive in the $10,000 fund. But the court did not regard the disposition as an infraction of the statute of wills and, inasmuch as the beneficiaries could be identified by the description in the will aided by parol evidence of certain extraneous facts referred to in the will, the gift was good.

For a case of like nature in Rhode Island, see Metcalf v. Sweeney, 17 R. I. 213, 21 Atl. 364, 33 Am. St. Rep. 864.

In Dennis v. Holsapple, 148 Ind. 297, 47 N. E. 631, 46 L. R. A. 168, 62 Am. St. Rep. 526, the testatrix bequeathed all of her property to—

"whoever shall take good care of me and maintain, nurse, clothe, and furnish me with proper medical treatment at my request, during the time of my life yet, when I shall need the same."

The court in discussing the question whether the future acts of the testatrix in selecting a person to perform the services specified in the will said:

"This person, it is true, depended upon the future volition of the testatrix in being chosen to perform the exacted services, and upon the consent of the latter in accepting the request, and in discharging the obligation imposed by the will; but the subsequent volition exercised by Mrs. Shull [the testatrix] in this respect cannot be deemed or considered in a legal sense as testamentary in its nature or character."

In Langdon v. Astor's Executors, 16 N. Y. 9, the testator in the second codicil of his will bequeathed a legacy of $100,000 deposited in

the New York Life Insurance Trust Company to the plaintiff, and qualified all his legacies and beneficial provisions in all his testamentary papers with a provision that if he should, in his lifetime, advance to the legatees the whole or a part of what he had given them in those papers, and should indicate his intention that such advancements were on account of such legacies or beneficial provisions, by charging the same in his books of account, then such legacies were to be considered paid and satisfied, in whole or in part, according to the amount of such advancements. The testator in his lifetime advanced to the plaintiff funds of the same description as those bequeathed, and made entries in his account books describing the funds advanced. The question was whether the testator could defeat the provisions in the will by future acts of the character described, or whether they were testamentary in nature and, not being in compliance with the statute of wills, could not be availed of to defeat the bequest. Denio, C. J., in discussing this question at page 25, said:

"There is no principle in the law which forbids the making of testamentary gifts dependent upon the happening or not happening of any event in the future, whether in the testator's lifetime or afterwards. A bequest may be made with a provision that it shall not be operative if the legatee shall in the testator's lifetime receive a particular sum of money from another person, or if he shall within that time become entitled to an estate as the heir or legatee of another. So a testator may very properly provide that a legacy given in his will shall not be operative if he shall in his lifetime give the legatee the like sum. This is not the reservation of a license to alter or revoke his will by an unattested paper. The fact which is to destroy the legacy in such a case is not a change of purpose, a new act of testamentary volition, which requires an instrument in writing clothed with testamentary forms. The gift inter vivos is a fact in pais, which does not require a writing, and the effect given to it, of superseding and extinguishing the legacy, is prescribed by the will itself, and is authenticated in the same manner as the legacy, of which it is in fact a part. It differs, it is true, from a condition which looks to the act of a third person, or the happening of an event in respect to which the testator is to have no agency; and I concede that a testator cannot prescribe in his will that an act to be performed by him, indifferent in itself and having no pertinency except its effect upon his testamentary dispositions, shall change such dispositions. Such a provision would allow a testator to alter his will otherwise than by an attested instrument. He cannot therefore declare that any mere entry in his books, or other writing without attestation according to the statute, shall in itself have any effect upon the provisions of his will. But the bestowal of a substantial sum of money or amount of property is an act of a different kind. It is a pecuniary transaction belonging to the actual business of life. It is an act which he may perform whether he has made a will or not. It effects a substantial change in the pecuniary condition both of the testator and the donee. * * * The circumstance which is to determine whether the testamentary gift shall be operative at the testator's death is, in this case, an act taking effect in præsenti, and is one of those transactions of business which every owner of property may perform for its own sake, and without reference to its operation upon any instrument he may have executed. There is nothing in the policy of the law requiring it to be proved by other than the usual evidence. There is no special danger that it may be simulated or set up by false testimony against the truth of the case. Not being promissory or executory in its character, but taking effect as it does co instanti, with the volition of which it is the result, there is no danger that it may be done without a due appreciation of its character; as testaments, promises and other engagements, looking to the future for their consummation, may be and frequently are. It has not one of the characteristics of a testamentary act, and there is not, in my opinion, any-

thing in the law that requires that it should be authenticated by testamentary formalities."

In Lawrence v. Lindsay, 68 N. Y. 108, the court stated that if the testator intended that an entry in his books should defeat a legacy, without the legacy having been paid in fact, it was doubtful whether such a provision would be valid. It intimated very strongly that it would not; that it would be "in substance a provision for canceling a provision in the will by an unattested writing."

To the same effect, see Moore's Case, 61 N. J. Eq. 616, 47 Atl. 731, Harris et al. v. Harris Estate, 82 Vt. 199, 72 Atl. 912, and Coggeshall v. Home for Children, 18 R. I. 696, 31 Atl. 694. In most of these cases, if not in all, it is clearly pointed out that a declaration of the testator noted in his books of account, standing alone and apart from the fact of payment, would not be admissible; but, where payment has been made, a declaration noted in books of account that it was made as an advancement is admissible, for the reason that it is a part of the act or transaction which it accompanies and explains.

In the Matter of Piffard, 111 N. Y. 410, 18 N. E. 718, 2 L. R. A. 193, the testator by his will gave to his daughter S. one-fifth of all his estate absolutely. By a codicil he directed that S. should have power by her will "heretofore or hereafter" executed to dispose of the share devised and bequeathed to her, and to that end he directed that such share should be paid over by his executors to the executors or trustees named in her will in case of her death during his lifetime, but, in case she survived, then that such share should be paid over to her. S. died before the testator, leaving a will disposing of her estate. The testator's will was construed by the court to mean, not simply that he gave to his daughter a power of appointment, but that it showed the testator intended, in case S. predeceased him, to devise and bequeath by force of his own will the daughter's one-fifth share to such person or persons and in such shares or proportions as she had directed or should direct by will in the disposition of her own property, and that the will of the daughter could be referred to, to define and make certain the persons to whom and the proportions in which the one-fifth should go. In its opinion the court said:

"And while * * * the testator gave a power of appointment, which, as a power, the donee could not execute in her father's lifetime, because she could not herself dispose of what remained wholly in another's power and ownership, yet the further language of the codicil shows its intent to be that, in case of the death of the daughter in the lifetime of the father, the latter intended to devise and bequeath by force of his own will the daughter's one-fifth to such person or persons and in such shares and proportions as by an existing will, made before or after the date of the codicil, she had determined and directed or should determine and direct in the disposition of her own property; and 'to that end,' in aid of that result, he explicitly declares that the one-fifth given to her shall be paid over to her executors for the evident purpose of passing to her devisees and legatees that share precisely as if it had been her property at her death, and had become distributable as such by force of her will."

And again the court said:

"Her will, therefore, is referred to, not as transferring the property by an appointment, but to define and make certain the persons to whom and the

proportions in which the one-fifth should pass by the father's will in case of the death of the daughter in his lifetime."

In that case it appeared that at the time the testator made his first codicil, directing how his daughter's one-fifth share should go in case she predeceased him, the daughter was alive and that the language of the codicil referred, not to any particular will which the daughter had then made, but to a will which should be her last will, whether made before or after the codicil. The testator, therefore, at that time intended by his will to refer to a future act of his daughter, to explain the language of his will and to identify the beneficiaries and define the shares which they should take in the one-fifth interest under his will. It is true that it appeared that after the daughter's death, leaving a last will, the testator made two codicils, confirming his will and the first codicil, but no weight is given by the court to this fact other than as confirming its view of the meaning of the language used in the first codicil. Whether the daughter's will was in existence at the time he made his first codicil or the last two codicils was apparently of no importance, as, under the law of New York, the doctrine of incorporation of existing documents by reference did not prevail. The material thing was that the daughter left a last will disposing of her property and that it existed at the time of the testator's decease.

In the Matter of Fowles, 222 N. Y. 222, 118 N. E. 611, Ann. Cas. 1918D, 834, the decision in the Matter of Piffard, supra, was approved. It is true that three judges dissented in the Fowles Case, but a careful reading of the opinions shows that the question upon which the members of the court were in disagreement was the interpretation of the ninth article of the husband's will. The majority of the court were of the opinion that this article, by implication at least, referred to the legatees named in the wife's will and made them his legatees, while the minority were of the opinion that this article of the testator's will could not be so construed, and that as it could not the decision in the Matter of Piffard was not applicable. They did not question the correctness of the decision in the Piffard Case, but denied its applicability in view of the construction which they placed upon the ninth article. In this case the reference in the husband's will was, not to a will of his wife then in existence, but to "such last will and testament as my said wife may leave," clearly contemplating a future act.

In Condit v. De Hart, 62 N. J. Law, 78, 40 Atl. 776, it was held that the provisions of the father's will disposing of his residuary estate disclosed that he intended that the residue should go to such persons and in such shares as the son had disposed of the same, "by his last will and testament duly made and executed by him at any time." The son died leaving a last will, and the father thereafter made a second codicil, confirming his will and prior codicil. Whether the doctrine of incorporation by reference prevails in New Jersey the opinion does not disclose. The ground of the decision was that of the Piffard Case. The gist of the decision as stated by the court was that the son's will could be—

"referred to for the purpose of ascertaining the person to whom that estate [the residuary estate of the father] passes by the father's will. The latter

instrument effectuates what the son attempted to do, but could not do by his own will."

Whether the New York and New Jersey courts were right in the construction which they placed, in the former case on the husband's will, and in the latter on the father's, is of little consequence so far as the questions with which we are dealing are concerned. The important thing is that they construed the respective wills of the testators as making complete dispositions of their property, and as referring to the future wills of the wife and son simply as extraneous facts explaining and defining the meaning of the language used in the testator's wills; that these extraneous facts were not testamentary acts—that is, did not dispose of the husband's or father's property—and could be shown by parol to make definite the dispositions under the husband's and father's wills.

The case of Curley v. Lynch, 206 Mass. 289, 92 N. E. 429, is not in conflict with the Fowles or Condit Cases. In Curley v. Lynch, the scope of the inquiry by the court was limited, for—

"it was agreed that the only questions involved in the case were whether a valid power of appointment was given to Mary E. Lynch during her life by the will of her husband, and whether she could, or did by her will, make a valid appointment under such power, and also whether her nephews and nieces took under the wills of Eugene Lynch and Mary E. Lynch any interest in his estate."

In that case Eugene Lynch, the husband, by his will, divided the residue of his estate into two equal parts, one of which he designated as the Mary E. Lynch trust estate, and devised and bequeathed this part to trustees (1) to pay the net income in quarterly payments to his wife during her lifetime; and (2) after her death to make equal division of said part and pay over one of said equal divisions "as my said wife shall in and by her last will and testament devise and bequeath the same."

Mary E. Lynch died January 23, 1909, three days before her husband, leaving a will in the residuary clause of which she stated:

"All the rest and residue of my property, inclucing my stocks * * * I give, devise and bequeath to my nieces and nephews, there being seven in number. * * *"

The wife's will was made four days before the husband's. It was held (1) that the power of appointment given in the husband's will did not and could not come into existence until the husband's death; (2) that, the wife being then dead, "the power itself never came into existence"; (3) if the language of the wife's will could be regarded as an attempt to exercise the power given under the husband's will, it was a mere nullity; and (4) that although her will was in existence at the time the husband executed his will, and might have been incorporated in his will, the language of his will did not warrant such an interpretation, as it referred to "whatever last will his wife should leave at her decease, whenever she might execute it, and not solely to the will which, as he knew, she had then executed." All that this case stands for is (1) "that Mrs. Lynch took no valid power of appointment under the will of her husband, and did not by her will make

a valid appointment of any part of his estate;" and (2) that the wife's will was not incorporated by reference in the husband's will. The question was not considered whether there was language in the husband's will manifesting an intent to devise and bequeath one-half interest in the Mary E. Lynch trust estate to the persons and in the shares in which the wife had devised and bequeathed the residue of her own estate, and his will contained no language, as did the will in the Piffard Case, capable of such construction.

In view of the principles announced in the foregoing decisions, and many others which I have examined, but find it unnecessary to refer to, I am of the opinion that Mr. Davis did not die intestate as to the residue of his estate; that when he, in his lifetime, delivered the securities of the value of $2,000,000 to the trustee, with the trust instrument or instruments explaining and characterizing his act or acts, vested interests in certain shares of the trust fund at once accrued to the beneficiaries therein, which could only be divested or changed upon the happening of a condition subsequent occurring in the donor's lifetime and which became indefeasible upon his death (Stone v. Hackett, 12 Gray [Mass.] 227; Talbot v. Talbot, 32 R. I. 72, 103, 78 Atl. 535, Ann. Cas. 1912C, 1221); that having died leaving in existence the trust fund, with donees having vested interests therein, and a will in which he describes his legatees and their shares in the residue of his estate by reference to the trust fund, stating that it should be divided in the same way and go to the same persons as the trust fund would go at his decease, the trust, as it existed at his decease, may be referred to as an extraneous fact, to make certain the meaning of the language of the will, and, this having been done, the residue passes under the will, and not by force of the trust deed, in the shares and to the persons thus made certain.