## Hartz's Estate.

*Wills—Unnamed legatee—Description of beneficiary.*

1. It is not essentially necessary that a testator name the legatee or devisee in order to give effect to a bequest. It is sufficient if he is so described in the will as to be ascertained and identified. The testator need only provide the means of ascertaining the objects of his bounty according to the maxim, *id certum est quod certum reddi potest.* If the description distinguish the claimant from every other person, it is enough.

2. Where, after making certain specific bequests, a testatrix gives the residue of her estate "to such person or individual with whom I have my home and abode, and who cared for me and nursed me during the declining years of my life and during my last illness," and there is a person who measures up to the requirements of and corresponds to the description in the will, distribution will be made to such person.

3. The fact that decedent was ill only two weeks before her death will not defeat the claim of the person who nursed her.

4. In such case, the presumption against intestacy applies in favor of the claimant.

Audit of executor's account. O. C. Berks Co., File No. 10140.

*Paul H. Price,* for accountant; *W. S. Rothermel,* for claimant.

*H. F. Heinly,* for next of kin.

SCHAEFFER, P. J.—The decedent died on Jan. 14, 1925, testate and unmarried, and by her last will and testament, after directing the payment of her debts and giving instructions as to her burial and tombstone, provided as follows:

"Third. I give and bequeath to my son, Frank Eshelman, the sum of Five Dollars, as his share out of my estate.

"Fourth. I give and bequeath to Carrie Eshelman, wife of Frank Eshelman, the sum of Five Dollars.

"Fifth. I give and bequeath to Luther Eshelman and Lillie Eshelman, my two grandchildren, each the sum of Five Dollars.

"Sixth. All the rest, residue and remainder of my estate, real, personal and mixed, of whatever nature or kind soever the same may be and wheresoever situate at the time of my decease, I order and direct that my executor shall convert into money . . . and the proceeds of such conversion, after payment of all debts, funeral expenses, specific bequests, and costs of settlement of my estate, I order and direct shall be paid to, and I give, devise and bequeath the same to such person or individual with whom I have my home and abode, and who has cared for me and nursed me during the declining years of my life and during my last illness.

"Seventh. I order and direct that my executor hereinafter named shall have a full calendar year time in which to convert my estate and account for the same; any law to the contrary notwithstanding."

The account contains the principal proceeds of personal estate and shows a balance for distribution of $2405.99. Accountant submits to be surcharged $74.27, interest on deposits in bank, and asks for, and is allowed, an additional credit of $3.75 for spouting put at decedent's house in her lifetime. He also asks to have impounded in his hands the sum of $125 for the cost of the erection of a tombstone at the grave of testatrix, and that will be done. Against the balance, Charles R. Werner presented, and was allowed, an admitted claim of $33.73 for moneys advanced to decedent during her lifetime.

Annie Millheim claims the balance in the account, after payment of debts and legacies, under the residuary clause mentioned; and Frank Eshelman, son of testatrix, to whom she gave "Five Dollars, as his share out of my estate," contends that Mrs. Millheim does not answer the description of the

residuary legatee contemplated in the will, and that, therefore, there is an intestacy as to the residue of the estate. In other words, the position of the son is that what Annie Millheim did for the testatrix does not bring her services and relation to decedent within the scope and meaning of the language of the will, and that she has failed to bring herself within the description of the legatee.

In Reinheimer's Estate, 265 Pa. 185, it was held that "it is not essentially necessary that a testator, in his will, name the legatee or devisee in order to give effect to the bequest. It is sufficient if he is so described therein as to be ascertained and identified. The testator need only provide the means of ascertaining the objects of his bounty, according to the maxim *id certum est quod certum reddi potest*. If the description distinguish the claimant from every other person, it is enough."

Therefore, if the person who claims the residue here measured up to the requirements of, and corresponds to, the description in the will, so that it is reasonably certain that, under the facts presented, she was intended to be the object of testatrix's bounty, she must be regarded as sufficiently ascertained and identified and is entitled to take as residuary legatee. The testatrix substantially declared that whoever would give her a home and abode, and care for her and nurse her during her declining years and during her last illness, should receive the residue of her estate. These conditions are the standard or test by which the beneficiary is to be determined.

We then come to the question whether sufficient evidence has been offered to point out and describe the person intended as such by the testatrix in her will. It appears from the evidence that the testatrix was a widow, about sixty-five years of age, and that in 1922 she came to the home of Mrs. Millheim, at No. 127 Bern Street, in Reading, Penna., with whom she lived, off and on, up to the time of testatrix's death on Jan. 14, 1925. The testatrix was ill only six weeks and was confined to bed for about two weeks, when she died, at the home of Mrs. Millheim, who nursed and cared for testatrix during her last illness. The evidence is clear and undisputed that testatrix was at the Millheim home when she died; that the funeral services were held at the Millheim place, and that the claimant nursed her and looked after her comfort in her last days. It was further shown by a number of witnesses that testatrix was at the Millheim home for over two years, intermittently, prior to her death, and that she regarded that place as her home. On different occasions she discussed her relations with Mrs. Millheim and told her friends and neighbors that she lived with Mrs. Millheim. Indeed, it is not disputed that she came to Mrs. Millheim's house in 1922 and was there at different times; but the contention is made that testatrix did not have a fixed abode or home at Millheim's, and that she was there merely at intervals on visits for a week or so, and in no different relation from what she sustained to many other friends and relatives.

Evidence was presented by the contestant, the son, to prove that testatrix was of a roaming disposition, that she had no settled place as her home, that during the period from 1922 to 1924, when it is claimed she had her home with Mrs. Millheim, she visited numerous families, with whom she stayed for a week or more, and that on one occasion she spent a few months in the City of Allentown, and on another stayed on her farm in Brecknock Township during the summer months.

It is admitted on the part of Mrs. Millheim that testatrix did go away on visits which lasted a week or more, but Mrs. Millheim contends that, regardless of how often testatrix went away or how long she stayed, she treated the

Hartz's Estate.

Millheim home as her home, and that this position is supported by the outstanding fact that when she became ill, she turned to the Millheim home, where she remained and was cared for to the time of her death. And when it is remembered that Mrs. Moore, a sister of testatrix and a witness called on behalf of the son, said "that she went from place to place, she did not rest anywhere," and "I can't say that she was at any particular place," it is not difficult to understand that she had her home with Mrs. Millheim since 1922, even though she was not there continuously. In the light of this admission on the part of the sister and other evidence to the same effect, it is not inconsistent to hold that she lived at Millheim's, even though she was not there every week or month during the period from 1922 to 1924.

The fact remains that whenever testatrix did come to Millheim's, there was a home for her, and that when she finally became ill, she went to Mrs. Millheim's place and Mrs. Millheim nursed her and cared for her. It was a home and abode such as testatrix had in mind and referred to in the language of her will.

It is also argued that, since testatrix was bedfast only two weeks, she had not been nursed during her declining years, and that the claimant did not answer the full description of the will. In Glasgow's Estate (No. 1), 243 Pa. 613, where the testator gave his estate to the one who looked after him and nursed him during his last illness, our Supreme Court, at page 617, said: "The will must be considered with a thought to the conditions under which it was written; and when it and all the surrounding circumstances are looked at reasonably the appellants stand out clearly as aptly fitting the testator's description of those to whom he desired the balance of his estate to go." In that case, Mr. Justice Moschzisker also said that the court must give a reasonable construction to the language employed, and that the words used must be interpreted in a reasonable way, guided by the controlling facts of the case.

So, in the case at bar, a reasonable and fair interpretation of the provision disposing of the residue discloses a purpose and intent of testatrix to give her residuary estate to the person who will give her a home and take care of her and nurse her during her last years and days and her last illness. When testatrix speaks of her declining years, she undoubtedly means the time when health and strength failed and when life was ebbing to its close. The testatrix became ill at her home with Mrs. Millheim and died after a brief illness of two weeks, which was her last illness; and having been nursed by the claimant, these facts give Mrs. Millheim the status demanded by the terms of the will.

The fact that the illness covered only a few weeks, and did not continue for a number of years, cannot be said to defeat the claim of Mrs. Millheim that she answers the description called for in the will: Stump's Estate, 4 D. & C. 565. Testatrix might have been ill for months or years; however, having died after an illness of about six weeks while at her home with Mrs. Millheim, she was, nevertheless, in her declining years or days, and the situation presented comes within the terms and meaning of the will: Reinheimer's Estate, 265 Pa. 185.

Moreover, in determining whether the claimant corresponds in every particular to the description in the will, we must bear in mind that the most favorable view ought to be taken of the effect and sufficiency of her proof, because the presumption is against intestacy and will not be adopted if it is possible to escape such construction: Keene's Estate, 221 Pa. 201; and this presumption is particularly strong in the present case, where it appears that testatrix was not on very cordial terms with her relatives, and that she

expressly stated in her will that her son was to have only $5 as his share out of her estate. Before she was ill and while she was confined to her bed, neither her sister nor her son took any interest in her, nor did they at any time concern themselves about her; and, consequently, in the light of this conduct, it is very obvious why testatrix did not make them her beneficiaries and gave her estate to the one who would give her a home and take care of her in her last days.

From the evidence we find the following facts:

1. That Lizzie Ann Hartz, the testatrix, died on Jan. 14, 1925, at the house of Annie Millheim, No. 127 Bern Street, Reading, Penna.

2. That testatrix had her home and abode with Annie Millheim from 1922 to the day of testatrix's death on Jan. 14, 1925.

3. That Annie Millheim cared for and nursed the testatrix during her last days and last illness.

Our conclusion is that Annie Millheim answers the description of the residuary legatee mentioned in the will of testatrix and that she is entitled to the residue of this estate.

From Charles K. Derr, Reading, Pa.