## Kirchner's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*W. A. Rex Schultze*, *Sidney E. Smith*, and *Henry M. Dubbs, Jr.*, for exceptants.

*Vincent A. Carroll*, contra.

LADNER, J., November 8, 1940. — Andrew Kirchner, testator, gave his estate in trust for the maintenance of his wife (a mental incompetent) and at her death directed that "one half of the amount remaining is to be given to the Home where my wife was kept in her last years, while the other half is to be distributed equally," to named legatees. The will was dated November 13, 1934. Testator died March 5, 1937. On March 30, 1936, pursuant to petition of testator, his wife had been committed to the Norristown State Hospital where she remained until her death, January 13, 1938. The Board of Trustees of the Norristown State Hospital claimed the one half of the residuary estate directed to be given to the "Home" where testator's wife was kept in her last years. The auditing judge sustained this claim. Exceptions were filed, but the record, with the consent of the auditing judge, was recommitted to enable additional testimony to be taken.

At the rehearing, testimony of the scrivener of the will was received subject to objections as to its admissibility. Thereafter, the learned auditing judge held the testimony inadmissible for the reason hereinafter referred to, and filed his supplemental adjudication of November 9, 1939, reconfirming his original adjudication. Subsequently, after argument on exceptions, at his request, the record by decree of March 11, 1940, was again recommitted to the auditing judge so that the Commonwealth could be

given the opportunity "to present evidence that the Norristown State Hospital comes within the purview of the word 'Home' as used in the will of the testator, etc." A second supplemental adjudication pursuant to rehearing duly had was filed June 20, 1940, and the original adjudication again reconfirmed.

We now have before us for disposition exceptions filed by Mr. Dubbs on behalf of the residuary legatees under decedent's will to the original adjudication and the two supplemental adjudications; also exceptions filed by Messrs. Schultze and S. E. Smith on behalf of the Swiss Consul acting for the next of kin. These two sets of exceptions raise but three questions, which will be considered in the order now set forth: (1) Whether there was error in excluding the testimony of the scrivener of the will; (2) whether there was error in sustaining the claim of the Norristown State Hospital; and (3) if the award to the hospital is found to be error whether the share of the estate in question should be awarded to the residuary legatees or to the next of kin.

On the first question, it appears the scrivener's testimony excluded was to the effect: (1) That testator's intention as expressed at the time the will was made was, that he wanted his wife placed only in a German home and his directions in this regard were intended to be mandatory; (2) that testator, after his wife had been admitted to the Norristown State Hospital, declared he did not want any of his money to go to the hospital, and asked the scrivener if the will had to be changed, and, upon being advised that the provision in the will was inoperative, testator made no change. The auditing judge concluded that the testimony was inadmissible for the following reasons, which we quote from his supplemental adjudication: "The intention of the testator must be found from what appears upon the face of the will and, while extrinsic evidence may be admitted to aid or explain, it must always relate to that which is embodied in the will. The control-

ling principle regarding the admission of such testimony is that it cannot be received as evidence of the testator's intention outside of and independent of the written words employed: Reinheimer's Estate, 265 Pa. 185.

"The scrivener's testimony as to his understanding of what the testator intended, as was said by Sharswood, J., in Willard's Estate, 68 Pa. 327—'would be in the teeth of every precedent, and a virtual repeal of the Act of Assembly, which requires all wills to be in writing.' See also Dembinski's Estate, 316 Pa. 61."

We are of the opinion that the auditing judge has correctly stated and applied the controlling principles of law. A similar ruling was made by Lamorelle, P. J., in Blanche Cooper's Estate, no. 1273 of 1931. The exceptions questioning the exclusion of this testimony are therefore dismissed.

We proceed to the consideration of the second question, whether there was error in awarding the legacy of one half of the residue of the estate to the Norristown State Hospital under the bequest to the "Home where my [decedent's] wife was kept in her last years."

The learned auditing judge in his second supplemental adjudication finds the following facts from the testimony: That the Norristown State Hospital was incorporated by the Act of May 5, 1876, P. L. 121, sec. 8, by the name "trustees of the State Hospital for the Insane of the Southeastern District of Pennsylvania . . .". That section 9 provided "That this hospital shall be specially devoted to the reception, care and treatment of the indigent insane, and that . . . this class shall have precedence over paying patients." That under The Administrative Code of April 9, 1929, P. L. 177, sec. 202, the board of trustees is now a departmental administrative board in the Department of Welfare and designated the "Board of Trustees of Norristown State Hospital". That decedent's wife, who was 80 years of age, suffered from a senile mental disorder and that the kind of care of this type of patient was simply a matter of custody and seeing that they have suf-

ficient to eat and proper physical conditions under which to live, such patients not being amenable to treatment. That at the hospital there are a few hundred patients who are not restrained in their freedom to go about the hospital area. That the hospital admits persons eligible to old persons' homes provided their mentality is impaired, who need closer supervision and care than such homes usually afford. However, patients when their mental impairment is cured may not remain at the Norristown State Hospital. Only persons whose mentality is impaired in some degree, whether slight or great, curable or incurable, are received and then only on commitment, voluntary or involuntary. The learned auditing judge then found that the Norristown State Hospital, while denominated a hospital and restricted to the mentally affected, "also performed the functions of a 'Home' for elderly persons who are mentally incompetent" and "that institution gives to aged persons" of the type of Mrs. Kirchner not treatment for their senile dementia, which is incurable, but care, food, and lodging, and that "it was a Home for the mentally incompetent; a refuge for those permanently incurable", and awarded the bequest in question to it.

We have no doubt that, in the broadest sense of the word "Home", the Norristown State Hospital might come within some aspects of the definition by the lexicographers which the auditing judge quoted, viz.:

In the New Century Dictionary, "Home" is defined as: ". . . an institution for affording domestic comfort to the homeless, sick, infirm, etc.; an asylum . . .".

In Webster's New International Dictionary, it is defined as:

"A place of refuge and rest; hence, an asylum; as, a *home* for outcasts; a *home* for the blind . . .".

We apprehend, however, the question for determination here is what did *testator* mean by the use of the word "Home", not whether an asylum or a hospital might conceivably be called a home.

Prima facie, a hospital is not a home. The former connotes a place where a patient is kept only until cured, and where medical attention and curative treatment is the main objective. And the mere fact that death might overtake the patient before discharge has no bearing on the definition of the word "hospital." A home means a permanent residence or a domicile. As pointed out by lexicographers quoted and in the Oxford Dictionary, the word "Home" is properly used in the sense of an institution providing refuge or rest for the destitute, the afflicted, or the infirm, etc.; a place where they remain for the rest of their lives. We have in this city and State many such homes which are customarily referred to as institutional homes. Some are denominational, others not, but the main purpose of both is to provide a comfortable dwelling place for those who are either without family or else are in such feeble condition or state of health that they need attention which cannot be provided by the ordinary family except at prohibitive expense.

The sense in which this testator used the word "home" must of course be gathered from a reading of the will as a whole, and when we do so it seems the first impression, that this testator did not mean a hospital such as the State hospital at Norristown, is confirmed. Thus if we examine paragraphs I(c) to (f) of his will, we find he instructed the trustees as follows:

"They are to see that my wife, Wilhemenia Kirchner, is placed in proper surroundings, in a clean, refined German institutional home for aged people where she will be looked after to her every desire, and where she will have the comforts of home. Such an institution is to provide freedom of worship. If feasible, I recommend the Old Peoples' German Home at Warrington, Bucks County, Pennsylvania, as the institution where she be entered.

"(d)—The trustees are to make the necessary financial payment to this institution to provide for the maintenance of my wife, Wilhemenia Kirchner.

"(e)—The trustees are to act for my wife in every case as she is mentally unfit to take care of herself. Her mental condition is such that she must be protected by trustees.

"(f)—My wife, Wilhemenia Kirchner, is to be provided for in this institution until the time of her death."

There follows the clause containing the bequest as follows:

"(g)—Upon her death, the trustees are to dispose of the money remaining as follows: One half of the amount remaining is to be given to the Home where my wife was kept in her last years, while the other one half is to be distributed equally to these people as follows: . . ."

This language of the will corroborates the first impression that testator was using the word "Home" in the sense of an institutional home, and not in the sense of reference to any place where his widow might be living at the time of her death.

It seems to us that the question whether the directions to the trustees to place the widow in an institutional home of the type described are precatory or mandatory is beside the point. The words, however construed, indicate clearly that the word "Home", in paragraph I(g), was used by testator in the sense of the type of institutional home which he described in the preceding paragraphs. See Hope's Estate, 24 Dist. R. 555 (1915).

Whether the trustees failed to comply with a mandatory direction or merely refused to exercise a discretion vested in them cannot alter the fact that the hospital in which testator's wife died does not meet the description of "home" in the sense in which that word was used by testator.

Somewhat similar to the instant case is Blanche Cooper's Estate, no. 1273 of 1931, adjudication by Lamorelle, P. J., where decedent bequeathed her residuary estate to "whosoever takes care of me in my last sickness either relative or stranger." Decedent was admitted to a hospital where she died a month after her admission. The

auditing judge ruled that neither the hospital nor the two nurses who attended decedent up to the time of her death were entitled.

Nor can we accept the suggestion of counsel for the State hospital that in any event we may sustain the award under our cy pres powers. Before the cy pres doctrine can be invoked it must first clearly appear that testator intended his bequest for a charitable use. There is here a total absence of such intent.

Being of the opinion that the gift failed for the reasons above stated, exceptions in regard thereto must be sustained.

We turn now to the third question raised by exceptions, viz, who takes because of the lapse of the legacy? Ordinarily the sustaining of exceptions would require a recommitment of the record to the auditing judge to determine the question whether the next of kin or the residuary legatees would take. This question was argued before us, and with the consent of the auditing judge we will dispose of it. We are all of the opinion that the bequest that failed, being of the residuary estate, passes under section 15 (c) of the Wills Act to the other residuary legatees for the reasons recently and fully stated by Judge Bolger in his adjudication, confirmed by the court in banc (opinion by Judge Stearne) in Morgan's Estate, 37 D. & C. 629. See also Desh's Estate, 321 Pa. 286; Umble's Estate, 323 Pa. 170.

All exceptions filed July 5, 1940, on behalf of John Kelly, executor of the estate of Lena Febinger, deceased, are sustained. As to the exceptions filed June 24, 1940, by Maurice J. Rohrbach, acting Swiss Consul, attorney-in-fact, exceptions 1, 2, 3, 6, 9, 10, and 12 are also sustained; the rest of the exceptions are dismissed.

The adjudication, as modified by this opinion, is confirmed absolutely.

Judge Bolger dissents.