## Walmsley Estate

*Henry Stuckert Miller* and *Thomas S. Weary*, for accountant.

*Thomas F. Doran*, for claimant.

*Paul P. Wisler*, for Commonwealth.

TAXIS, P. J., February 10, 1955.—The account shows a balance for distribution which consists of real estate, 1377 High Avenue, Roslyn, Pa., and, less encumbrances, is valued at $2,649.51. . . .

Decedent died on July 20, 1953, leaving a will dated July 2, 1953, which was duly probated on August 6, 1953, and on which the present letters were granted to Arthur Irving Buck, sole executor.

Decedent was survived by neither wife nor children. There were no known relatives. The Commonwealth appeared to claim the balance for distribution as an heir under section 3(6) of the Intestate Act of 1947, in the event that an intestacy as to residue was declared.

The residuary clause of the will provided as follows:

"FIFTH. And as to all the rest, residue, and remainder of my Estate, real, personal or mixed, of whatever nature or kind or wheresoever situate at the time of my decease, I do hereby give, devise and bequeath, to my Friend and Companion's Whom GOD, sent me in my last days. And lastly I do make, Constitute and appoint to be the Exeecututor's of my Will.

Arthur Irving Buck )
Jean Shirley Buck    )
Two pages which this is the first."

It will be seen that testator preferred to designate his residuary legatees by a description, which expressed the motive for his gift, rather than by name. In such situation the court must place itself in the position of testator when he made his will, understanding, as

nearly as possible, the circumstances as he understood them, and apply his words accordingly: Gerety Est., 354 Pa. 14; Rossman Est., 168 Pa. Superior Ct. 6; Reinheimer's Est., 265 Pa. 185. Arthur Irving Buck and Jean Shirley Buck, claim to be the residuary legatees under this fifth provision of testator's will and on their behalf called five witnesses in addition to themselves to establish that they [Mr. and Mrs. Buck] were testator's "Friend and Companion's Whom GOD, sent me in my last days." No other individual claimants appeared in opposition contending that they and not the Bucks were residuary legatees. . . .

The most impressive witness for the claimants was a Rev. George H. Slavin, the minister of decedent's church. After the Bucks had moved in, the Rev. Mr. Slavin visited decedent on an average of once a week, at which times decedent said he was leaving his property to "this couple", meaning Mr. and Mrs. Buck; that decedent had previously drawn a will in favor of Rev. Mr. Slavin, but Rev. Mr. Slavin testified that he was not the "Friend and Companion's Whom GOD sent me in my last days"; that decedent was a very lonely man, but that he was very happy after the arrival of Mr. and Mrs. Buck. Rev. Mr. Slavin testified that, in his opinion, the Bucks were the intended residuary legatees.

After a careful review of all the evidence the court finds that Arthur and Jean Buck are the residuary legatees, and are the parties referred to by the decedent when he said "to my Friend and Companion's Whom GOD sent me in my last days," and that the services rendered by claimants identifies them as the only ones who could qualify under that description.

It is not without significance that those who would or could possibly assert a claim under that description appeared and not only testified on behalf of claimants but affirmatively removed themselves from possible

consideration by stating that they, the witnesses, were not the residuary legatees intended by testator; but that, in their opinion, Mr. and Mrs. Buck were the parties intended.

Where, as here, a will insufficiently identifies the beneficiaries, extrinsic evidence is admissible to identify the object or subject: Gerety Est., 354 Pa. 14. In determining what person may properly correspond to a description in a will if the evidence shows the existence of such person the will is not ambiguous and the person so described and identified must be taken as the intended beneficiary. It is not essentially necessary that a testator, in his will, name the legatee or devisee in order to give effect to the bequest. It is sufficient if he is so described therein as to be able to be ascertained and identified. Testator need only provide the means of ascertaining the object of his bounty. If the description distinguishes claimant from every other person, it is enough: *Reinheimer's Est.*, supra, 265 Pa. 185.

Accordingly the residue is awarded to Arthur Irving Buck and Jean Shirley Buck, his wife.

A claim was filed by William R. Batey and his wife, Helen Elizabeth Batey, for a 10 percent attorney's collection fee on a judgment note given by decedent to claimants.

The matter arose in the following manner: On January 19, 1949, decedent executed a judgment note in the amount of $1,504.35, with interest at five percent, the principal and interest not to become due and payable until the death of William B. Walmsley except in certain circumstances not now pertinent. The note represented an amount due claimants at the settlement of decedent's purchase of premises, 1377 High Avenue, Roslyn, Pa.

Claimants entered judgment on this note on January 27, 1949, along with a bond and mortgage in the

amount of $3,500. The note provided for "an attorney's fee of 10 percent added for collection".

Following the death of Mr. Walmsley on July 20, 1953, the executor advised the Bateys and their attorney that the note, principal and interest, would be paid in full as soon as cash was available; that it was proposed to mortgage certain property to raise funds to pay this note. Payment in full was made to the Bateys on March 10, 1954, in the amount of $1,889.03. The Bateys further claimed the sum of $150.44 as a 10 percent attorney's collection fee. The amount of the judgment and interest was paid at the settlement held on the mortgage loan but the estate of decedent refused to pay the counsel fee of $150.44.

The claim was resisted by the accountant on the ground that "the estate was at all times willing to pay the principal and accrued interest as soon as ready cash was made available, that the creditors agreed to this procedure, and that legal steps on their [creditors] part were at no time necessary". The accountants take too narrow a view of the provisions contained in the note. A stipulation in a promissory note or judgment note for the payment of the costs of collection or attorney's fee is valid and enforcible as a reasonable provision for indemnity to the creditor against expenses incident to a default on the part of the debtor and is founded on the conceded right of parties to make their contracts in what form they please provided they conform to the law of the land: 7 Am. Jur. 865, Bills and Notes, §138; see also 17 A. L. R. (2nd) 288. Such provisions for attorneys' collections fees are valid and enforcible to the extent that the amount is not excessive, oppressive, or unreasonable: cf. McAllister's Ap., 59 Pa. 204; Bury and Holman v. Pezalla, 27 Del. Co. 405; Walton v. Abbott, 57 Montg. 1. Such a fee constitutes a part of the judgment subject to the control of the court and the burden is on the debtor to show

that the stipulated fee is unreasonable. Since there is no evidence to support a finding of unreasonableness or oppressiveness the claim is allowed.

The account is confirmed, and it is ordered and decreed that Arthur Irving Buck, executor, as aforesaid, forthwith make the distributions herein awarded.