**Brody Estate**

410

*J. Welles Henderson, Jr.,* for accountants.

*Joseph Glider, Bruce L. Castor, H. Ober Hess,* and *Ballard, Spahr, Andrews & Ingersoll,* for claimants.

*Abraham A. Levinthal,* for City of Philadelphia and School District of Philadelphia.

*Donald J. Klein,* for Commonwealth.

SAYLOR, J., February 1, 1962.—Rose Brody died July 5, 1960, survived by neither spouse nor issue. She left a will, duly probated, by which she gave to Marcella D. Creighton, not related, her furniture, furnishings and automobile; to Dr. Robert G. Ravdin, the sum of $5,000; and gave the balance of her estate to

students and deserving children selected by her trustee after consultation with Marcella D. Creighton.

Letters testamentary were granted to the accountants on July 11, 1960, and proof of advertisement of notice thereof was submitted to me.

Payment of transfer inheritance tax of $1,140.79 on October 5, 1960, prior to appraisement, was duly vouched.

## A. Validity of Residuary Trust

Decedent executed her will on June 9, 1960. It is claimed on behalf of her heirs that the residuary trust created by item 4(b) of the will is either void as a charitable trust executed within 30 days before the death of decedent, or that it fails as a noncharitable trust because of indefiniteness.

Decedent provided by her will:

"The balance of principal and income, if any, as and when the same shall have been received, shall be distributed as soon as may reasonably be convenient thereafter unto such students and to such deserving children as my Trustee, after consultation with MRS. MARCELLA D. CREIGHTON, who is personally familiar with those in whose welfare I am interested, shall, in its sole and absolute discretion, select and designate as the beneficiary of such bounty."

At the audit, testimony of Mrs. Creighton, the scrivener of the will, and one Frederick Roye was admitted, subject to objection, to show that decedent had intended to benefit certain named individuals by this bequest. The objection is made that this testimony is inadmissible, and that, even if admissible, it does not sufficiently define the beneficiaries of the trust.

It is clear from an examination of the will that decedent intended to benefit some one or some persons. She has, however, achieved the unusual distinction of expressing her intent in such a way that the bene-

ficiary class is defined too narrowly to constitute a valid charitable trust, yet, at the same time is not sufficiently defined to constitute a valid private trust for designated beneficiaries. The conclusion is, therefore, reached that decedent died intestate as to her residuary estate in spite of the presumption against intestacy and the fact that decedent did intend to create a trust of some character.

### 1. The trust as a charitable trust

The definition of what is "charitable" for the purpose of classifying a trust as charitable is always stated in the broadest terms. See, for example, Taylor v. Hoag, 273 Pa. 194, 196-97 (1922), where it is declared that

"The word 'charitable,' in a legal sense, includes every gift for a general public use, to be applied, consistent with existing laws, for the benefit of an indefinite number of persons, and designed to benefit them from an educational, religious, moral, physical or social standpoint. In its broadest meaning it is understood 'to refer to something done or given for the benefit of our fellows or the public'; Knight's Est., 159 Pa. 500, 502."

See also Voegtly Estate, 396 Pa. 90 (1959) ; Barnwell's Estate, 269 Pa. 443 (1921).

The legislature has adopted a similarly broad definition in declaring that "charity" or "charitable purposes", as used in the Estates Act, shall include, but shall not be limited to, "the relief of poverty, the advancement of education, the advancement of religion, the promotion of health, governmental or municipal purposes, and other purposes the accomplishment of which is beneficial to the community."

Section 1(1) of the Estates Act of April 24, 1947 P.L. 100, 20 PS §301.1(1).

In the light of these broad definitions, a trust for "students" would be a charitable trust, although, as will be noticed later, a question still arises as to who are students. Similarly, a trust for "deserving children" would be held a charitable trust, although a doubt may arise because "deserving" may include meanings of worthy or meritorious, as well as needy. The adjective "worthy", when used in connection with persons, does not necessarily have the same meaning of charitable as was attributed to that word in Funk Estate, 353 Pa. 321 (1946), when interpreting the phrase "worthy cause or institution". As a further question of construction, the linking together by decedent of the standards of "students" and "deserving children" may result in the one standard serving to modify or restrict the other. Undoubtedly, if the will were construed as providing for the distribution of the fund to "such students and deserving children" as the trustee should select, the trust could be deemed a charitable trust. In such case, the will could be interpreted as confining the trustee to expenditures for what would be deemed a charitable purpose, reliance being made for such construction upon the decisions in Funk Estate, 353 Pa. 321 (1946); Anderson's Estate, 269 Pa. 535 (1921) and Dulles' Estate, 218 Pa. 162 (1907).

If the foregoing conclusion could be reached, the present controversy would be easily brought to an end; the trust would be held charitable and, because of the death of decedent within 30 days after the execution of the will, that trust would be void and the residuary estate would pass to decedent's heirs. It is believed, however, that this conclusion cannot be adopted because decedent did not by her will provide simply for the distribution to such persons as the trustee should select. She expressly directed that the action of the trustee should be preceded by "consulta-

tion" with Mrs. Creighton "who is personally familiar with those in whose welfare I am interested."

What was the intent of decedent in requiring consultation with Mrs. Creighton? Assume that Mrs. Creighton should inform the trustee that decedent had been interested in child B, and the trustee agreed that B was a student or a deserving child. Was it within the contemplation of decedent that the trustee could nevertheless refuse to make any payment to B, and then make payments to persons who were total strangers to decedent, merely because the trustee had discretion as to whom to make payments and preferred to make the payments to such strangers? It is unreasonable to believe that decedent did not intend that the prime, if not the exclusive, objects of her bounty should be "those in whose welfare (she had been) interested" the trustee merely being given the power of determining whether those persons were still students or deserving children and what amounts they should receive. It seems reasonable to believe that decedent intended that only after that group in which she was personally interested had been exhausted, or properly rejected by the trustee as unworthy, was the trustee to exercise the discretion to go outside that group. Again, it appears unreasonable to assume that decedent intended that the trustee could totally disregard the information obtained upon consultation and act as though such consultation were not required by the will.

As decedent was interested in, and intended to benefit, identifiable persons, the trust is not charitable, even though the designated persons would be "students" or "deserving children." An analagous situation arises when a gift is made to a person who happens to be the holder of an ecclesiastical office. There it has been held that when the gift is made to an identified person, it is not to be regarded as a gift for religious purposes

merely because the donee is an ecclesiastical officer: Hodnett's Estate, 154 Pa. 485 (1893) (legacy to the Pastor of the St. John's R. C. Church of Altoona, Pa."); Flood v. Ryan, 220 Pa. 450 (1908) (legacy to "Most Rev. P. J. Ryan, Archbishop of Philadelphia, absolutely."). By a parity of reasoning, a gift to an identified or identifiable person does not become a gift for education merely because the donee is a student, nor a gift to charity because the gift was inspired by the merit of deserving character of the donee. See also Shenandoah Valley Nat. Bank v. Taylor, 192 Va. 135, 63 S. E. 2d 786 (1951); Browne v. King, 17 IR LR Eq. 448 (1885).

It is also pertinent to note that, according to Bogert on Trusts, "if the door is left open for one to qualify as 'deserving' because he has been a good citizen generally, . . . or been a friend of the settlor, the gift cannot be said to be marked as charitable": 2A Bogert Trusts 69 §370 (1953). Counsel for the accountants aptly points out that by the designation in terms of "those in whose welfare I am interested" decedent expressly permits the benefits of the trust to be extended to specific individuals because of their personal relationship to her rather than their satisfying a general standard established for a charitable trust.

Consideration has been given to whether the foregoing conclusion is to be avoided on the theory that Mrs. Creighton was not to designate individuals but was to designate classes of individuals as though the will had stated that she was personally familiar with those classes of students and those classes of deserving children in which decedent was interested. The phrase "those in whose welfare" suggests that decedent was contemplating persons rather than classes. It is also significant that Mrs. Creighton did not testify as to classes but as to persons. It is, therefore, concluded

that decedent had intended that Mrs. Creighton was to furnish the trustee with the actual names of persons and not general descriptions of classes.

The trust now before the court cannot be considered a charitable trust on the basis of Wright's Estate, 284 Pa. 334 (1925). The pending trust is the converse of the trust in Wright's Estate, and the basis of the decision therein supports the conclusion that the pending trust is not charitable.

In Wright's Estate, testator bequeathed his residuary estate in trust, directed that the principal be preserved intact, and authorized his trustees to spend the income or to make loans from income "for the education of such boys and girls as in their judgment are deserving." Testator further stated:

"I desire and so direct that the above named trustees may, from the income of the said trust, pay to my nieces and nephews, by blood or marriage, such sum or sums as in their discretion, after investigation, may be necessary."

As summarized in the opinion of the Supreme Court, testator further directed "that no one person or family shall become indebted to the trustees, under the provisions of this trust, to a greater amount than $1,000, without the approval of the judge of the Orphans' Court of Mercer County". The court held that the trust was a valid charitable trust for the education of deserving boys and girls, even though the provision as to nephews and nieces permitted "the trustee to temporarily divert income . . . to a noncharitable purpose . . ." 284 Pa. at 340.

In the instant case, the primary objective of the trust is the distribution to persons in whom decedent was interested. While the trustee is not bound to accept the identification by Mrs. Creighton, it is to make distribution to persons identified by her unless, within

its sole discretion, it concludes that such persons are no longer students or deserving children. In the pending case, the primary objective is the distribution to noncharitable uses, in contrast with the Wright case in which the noncharitable purpose was merely incidental.

Although not essential to the decision of the case, and, therefore, technically dictum, the statement made by the Supreme Court as the rationale for its decision in the Wright case indicates the conclusion to be reached in the pending case. The Supreme Court there said (p. 339) :

"There is force in the contention where the trust is for both charitable and noncharitable purposes and the trustee is clothed with discretion so that the amount to be devoted to either is wholly at his option and therefore within his power to defeat the charitable purpose; or where there is a permanent but discretionary division of the trust fund between a charitable purpose which is lawful and a noncharitable purpose which is not. For instance, had the testator here clothed his trustees with power to permanently divide the income in question as they saw fit between an educational purpose and his relatives . . . the trust might fail for uncertainty . . . That, however, is not this case; here, the testator's paramount purpose was the creation of a permanent trust for educational purposes, while the power given the trustees to extend assistance to his needy relatives out of the income was incidental. At most it would leave the corpus untouched and cause only a temporary infringement upon the income, which must cease and leave the trust in full force and entirely for educational purposes upon the death of the nephews and nieces; therefore, we are not prepared to hold that such possible temporary use of income works the destruction of so worthy and permanent a charity . . . A

permanent charitable trust should not be stricken down because of a power given the trustee to temporarily divert income therefrom to a noncharitable purpose. Where the general trust is for charity it will be given effect, although some particular [minor] purposes to which the fund may be applied are not strictly charitable": 284 Pa. at 339-40.

In the Wright case, the amount of income which could be diverted to noncharitable uses was limited. Not more than $1,000 could be obtained by a nephew or niece without court approval. Moreover, in the Wright case, no principal could be distributed to noncharitable uses. In the pending case, both principal and income, without any limitation, may be distributed to the point of the total exhaustion of the trust fund to individuals designated by Mrs. Creighton as persons in whose welfare decedent was interested as individuals, which might not constitute a distribution for charitable uses.

It is held that the trust is not a charitable trust and is, therefore, not invalidated by the fact that decedent died within 30 days after the execution of her will.

As will be discussed herein under heading A(3), parol evidence is not admissible in determining whether the trust intended by decedent is a charitable trust.

### 2. The trust as a private trust.

The trust cannot be sustained as a private trust, for the will does not contain an adequate definition of the beneficiaries. Who are the beneficiaries of the trust? The will identifies the beneficiary group initially as "students" and "deserving children." Assuming that "students" is a sufficient beneficiary group designation for a charitable trust where it may be equated to a trust for education, it does not follow that it is a sufficient designation of the beneficiary group of a private

trust. Who is a "student?" The word is variously defined in dictionaries to mean a person who attends school; a learner or scholar; and a systematic observer, as a student of human nature or a student of life. The definition is thus so broad as to be virtually no definition.

Does the association of "students" with "deserving children" suggest any limitation which may narrow the beneficiary clause? That is, did decedent intend to limit "students" to those who were still minors and enrolled in school, although they were too old to be classified as "deserving children"? Such a construction would exclude students who were adults and those studying for advanced degrees and those who were students of a particular subject but were not enrolled in a school or other institution of learning. The concept of "deserving children", whether by itself or in conjunction with "students", does not establish any precise definition of the intended beneficiaries.

It has been submitted that the trust is sufficiently definitive upon the authority of Glasgow's Estate (No. 1), 243 Pa. 613 (1914), and Reinheimer's Estate, 265 Pa. 185 (1919). The situations involved in those two cases are to be distinguished from the pending controversy. In Glasgow's Estate, supra, decedent made a bequest to "Whomsoever takes care . . . and nurses . . ." him during his last illness, or saw that he was properly cared for and properly buried. In Reinheimer's Estate, supra, the bequest was to "the party or parties who may be farming my farm and taking care of me at the time of my death," and remaining with decedent up until the time of his death. These bequests were held sufficiently definite for the obvious reason that it could be readily determined as a fact who was taking care of the farm and was caring for decedent, or was nursing him during his last illness, the will itself defining

the class. Whether a given person was or was not then taking care of the farm or of decedent was a fact which could be determined by any witness who was in a position to observe the farm or decedent at the time of decedent's last illness and his death, for the taking care of the farm and of decedent were overt acts.

In contrast, under decedent's will, Mrs. Creighton is to express her opinion of those in which she knew decedent was interested. Whether decedent was interested was not an overt act that could be testified to by anyone else who had been in the presence of decedent during her last days. If Mrs. Creighton had predeceased decedent, or if she should die at any moment before there had been such consultation as disposes of the entire trust fund, there will apparently be no way to determine who were the intended beneficiaries. Under these circumstances, it is held that the pending controversy is not controlled by Glasgow's Estate and Reinheimer's Estate, both supra. Moreover, in the latter case, the court declared that it was not essential to name a legatee in the will because "It is sufficient if he is so described therein as to be ascertained and identified": 265 Pa. at p. 189. In the instant case, the beneficiaries are not "so described *therein* as to be ascertained and identified." (italics supplied). It is Mrs. Creighton and not the will who identifies them.

It is claimed that "a trust is not void for uncertainty as long as there is a tribunal competent to define it. Mears' Estate (1930), 299 Pa. 217; Dulles' Estate, (1907), 218 Pa. 162." It is manifest that this rule cannot be literally applied, for at some point the uncertainty of an instrument may become such that to give it definition would require a rewriting of the instrument by the court. Moreover, the two cases cited in support of that rule are not relevant to the pending controversy.

In Mears' Estate, supra, the court applied the cy pres doctrine to give effect to an intent to create a charitable trust. Far from being "uncertain," the Supreme Court notes that the "Testator is definite as to the means by which his charitable purposes may be carried out, and equally plain as to the objects of the charity." (299 Pa. at 219).

In Dulles' Estate, supra, the Supreme Court held that a valid trust was created by a bequest to trustees to distribute a fund ". . . among such religious charitable and benevolent purposes and objects or institutions as in their discretion shall be best and proper." The issue then before the court was whether decedent had created a charitable trust and not, as here, whether decedent had adequately designated the beneficiaries of a private trust.

Under the terms of decedent's will, the trustee has the discretion to reject persons recommended or identified by Mrs. Creighton and to determine who shall receive decedent's bounty. While the will has been herein construed as requiring the trustee to follow the recommendation of Mrs. Creighton as to the identity of the beneficiaries in the absence of a good reason for refusing to do so, there is no requirement that the trustee shall in every case follow her suggestions. As the trustee can exercise its judgment as to whom payment is to be made, the trust is invalid as indefinite under the authority of Kinike's Estate, opinion by Orphans' Court of Philadelphia County, affirmed per curiam in 155 Pa. 101 (1893), and Wilbur's Estate, 334 Pa. 45, 78 (1939). See also Wright's Estate, 284 Pa. 334 (1925).

In Kinike's Estate, the Orphans' Court of Philadelphia County, opinion by Ashman, J., stated that there was no question of the validity of a provision authorizing executors ". . . to distribute the [residue] among

such charitable institutions, and in such proportions as they in their discretion deem proper." The orphans' court further declared:

". . . So long as the gift is to a charitable use, the discretion reposed in the trustee may be coextensive with the disposing power of the donor himself. This is subject to the qualification that the discretion must be restricted to a purpose which is charitable in the technical meaning of the word; if it can by any possibility be exercised outside of the limits of that definition, it is invalid": 155 Pa. at pp. 101-02.

The conclusion herein reached is also supported by Wilbur's Estate, 334 Pa. 45, 78 (1939), holding invalid, as indefinite, a trust which gave the trustees the discretion to make distribution to "such persons, corporations and public charities or whatsoever as they may deem fit having full trust and confidence in them both or either of them that they will carry out and perform the wishes that I have upon the subject and fully known to them."

It is contended that "a logical interpretation of the terms of Mrs. Brody's trust . . . would limit the beneficiaries to the students and children in whom Mrs. Brody was interested . . . a class not at all indefinite." This argument is refuted by the terms of decedent's will, by which the trustee is not confined in the selection of beneficiaries to those described to it by Mrs. Creighton as those in whose welfare decedent had been interested. While decedent's primary intention was that the beneficiaries would be selected from those identified by Mrs. Creighton, there is nothing which prevents the trustee from rejecting all such nominations as unworthy and selecting others who are students or deserving children. The contention now considered can be sustained only by limiting the selection by the trustee to those named by Mrs. Creighton. As

decedent did not impose any such limitation, none should be imposed by the court under the guise of construction.

As will be discussed under the next heading, A(3), parol evidence is not admissible to render definite the indefinite provisions of decedent's will.

It is concluded that the trust under decedent's will is invalid as a private trust because the will does not adequately define the beneficiaries.

### 3. Inadmissability of parol evidence.

The parol evidence received at the audit, subject to objection, of Mrs. Creighton, of the scrivener of the will and of Frederick Roye, is held inadmissible. This conclusion is in accord with the general rule that parol testimony is not admissible to rewrite the will of decedent (Reinheimer's Estate, 265 Pa. 185 (1919); Battles Estate, 379 Pa. 140 (1954), even though it be the testimony of the scrivener; Beisgen Estate, 387 Pa. 425 (1956); Hartman's Estate (No. 1), 320 Pa. 321 (1936); Demkinski's Estate, 316 Pa. 61 (1934).

Sight must not be lost of the social objective which is expressed in the statutory requirement that wills be in writing. To permit parol testimony to be introduced whenever the meaning of the written will is not clear or is disputed is to open the door to those frauds and perjuries which the legislature intended to exclude when it enacted that wills be in writing and their execution established by two witnesses.

In a brief submitted to the court it is stated that "extrinsic evidence has often been admitted in order to determine whether a bequest or devise in a will was a gift for a charitable purpose. Lowe's Estate (1937) 326 Pa. 375; Sharp's Estate (1919) 71 Pa. Superior Ct. 34; Spotz's Estate (1944) 51 D. & C. 427." The statement, in the light of the three cases cited, would be more accurate if it read: When a bequest is made to a

named organization or institution, the courts, without passing on the question of the admissibility of evidence, have admitted evidence to determine whether such legatee was a charity in the light of its organization and activities.

It is obvious that if a decedent makes a bequest to the "X Club," proof must of necessity be admitted to determine whether "X Club" is a charity. Such a problem is not involved in the pending case. Here, decedent did not name the persons to receive her bounty by way of the trustee's hands. Here, parol evidence is offered to establish not the nature of named beneficiaries but the very identity of the persons who are to be the beneficiaries. Here, the parol evidence is not employed to give meaning to the words of decedent but to supply words which decedent did not employ.

The parol testimony is not admissible to give specific meaning to the will of decedent. It is true that parol evidence is admissible to aid in the construction of ambiguous provisions of a will. Care must be taken, however, to avoid the semantical danger of concluding that parol evidence is admissible in every case in which the meaning of the testator is not clear. Had decedent bequeathed property to "my nephew John", and it was shown that she had two nephews so named, parol evidenc would be admissible to identify the nephew intended. In the instant case, the court is faced not with the problem of which of two persons qualifies under the specific designation in the will, but with the fact that the description is so vague that it does not identify any beneficiaries.

The cases cited in support of the contention that in the instant case parol evidence is admissible to identify the beneficiaries are not apposite to the pending controversy. Walmsley Estate, 4 D. & C. 2d 69 (1955), is cited for the proposition that "parol testimony to show

who were the persons who attended a testator in his last illness has been held admissible where the will gave a bequest to such generally described persons." In the cited case, the class was explicitly defined by testator and parol evidence was admissible to determine who came within the designated class. Here, the definition of the class cannot be determined from an examination of the will.

Powell Estate, 71 D. & C. 51 (1950), is cited for the point that "parol testimony has also been admitted into evidence to show a testator's meaning of the word 'citizen' ". This, of course, is merely an illustration of the general rule that parol testimony is admissible to show that a testator had made his own dictionary and employed words in a special manner. See Funk Estate, 353 Pa. 321 (1946). Such a rule is not authority for admitting evidence to provide the names of beneficiaries not identified by the will.

Counsel quotes from Miller's Estate (No. 1), 26 Pa. Superior Ct. 443, 449 (1904), that "Parol evidence is admissible . . . to apply its [a will's] provisions to the subject or person intended when the description is defective, uncertain or too general to be understood." The generality of this statement must be restricted to the actual decision made by the court. Parol evidence was admissible to show that a meaningless description of "William Wilson's children" was intended to mean Seth Wilson's children, Seth having married testator's sister, testator often confusing Seth with Seth's brother William and calling Seth by the latter name. The actual decision in the case does not warrant the admission of the parol evidence in the instant case.

Counsel further states: "In Fickes' Estate (1915), 59 Pa. Superior Ct. 535, the Testator left the residue of his estate 'to Hattie M. Anstadt . . . her heirs and assigns forever, she knowing full well my wishes and I having confidence that she will carry them out'. The

court held that it was permissible to show by parol evidence that testatrix desired that certain property should go to designated persons and had made known this fact to the devisee and she had agreed to carry out Testatrix's wishes. These facts were held sufficient to establish a valid enforceable trust."

Fickes' Estate is to be distinguished from the pending controversy on the obvious ground that there the court imposed a constructive trust to prevent fraud on the part of the devisee to whom testator had given title in reliance on the devisee's agreement to carry out testator's wishes. In contrast, in the instant case there was no agreement by either the trustee or Mrs. Creighton to hold property in any manner which had been agreed to before the execution of the will. In the instant case, the property was given to the trustee expressly in trust and the trustee has so received it. The property was not given to the trustee absolutely, and the court is not asked to impose a constructive trust to prevent the trustee from keeping the property for itself.

It is concluded that the parol evidence admitted at the audit subject to objection is not admissible, either to establish that decedent intended a charitable trust or to define the beneficiaries of the trust in the event it be regarded as a private trust.

*4. The trust as an absolute transfer to the trustee.*

Consideration has been given whether it would be possible to hold that the directions with respect to the trust are merely precatory and to award the fund to the trustee in its individual capacity. If that could be done, the trustee would be legally free to use the fund for its own use or for any purpose, free of any control by decedent's will or by this court. The trustee would also be free to attempt to carry out the intent of decedent to the extent that it could determine what that intent was.

This possibility is rejected, because decedent's language amounts to a mandate when she states that the trustee "shall" make distribution to the persons in question. It is also significant that the trustee was described as a trustee, that distribution was to be made as soon as convenient and that the recipients were expressly described as "the beneficiary of such bounty." The fact that decedent conferred upon the trustee "sole and absolute discretion" is likewise significant, as such provision would be unnecessary if the fund were to be the absolute property of the trustee owned in its individual capacity. While decedent was vague as to who should be benefited by her trust, it is clear that she intended a trust and that her directions with respect thereto cannot be regarded as precatory or directory.

### 5. The trust as a power of appointment.

Consideration has been given also to whether the authority of the trustee under decedent's will to select the beneficiaries could be construed as a power of appointment. If it could be so regarded, the disposition made by decedent would be effective, for the donee of a power may be permitted to exercise the power in favor of anyone, subject to express limitations imposed by the donor, without regard to whether the appointee is a charity or not.

It is clear, however, that the power given to the trustee in the pending case was not a mere power of appointment, for the trustee is, in fact, a trustee, the residuary estate being expressly bequeathed to it in trust. Furthermore, the will confers various trust powers upon the trustee and various acts relating to the administration of the trust estate will, of necessity, be performed by the trustee. The pending case is, therefore, controlled by the prior decisions relating to trustees upon whom was conferred the power to select

the beneficiaries of the estate. As set forth under heading A(2), supra, those cases hold that a private trust is not valid when the trustee has an unlimited power to select beneficiaries who might not be charitable in nature.

Although not considered in the prior cases, the power to select the distributees must be regarded as an integral part of the trust. This prevents the adoption of the view that, although the trust, as such, has failed, the individual named as the trustee still may distribute the fund under the power given it as trustee to select the beneficiaries.

It is recognized that, as a matter of logic and of the social consequences involved, there is no reason for limiting the freedom of selection which may be given to a trustee while not imposing any limitations on the freedom given to the donee of a power. In the absence of the existing prior authority as to the rule applicable to trusts, it would be held that a trustee may be given the same freedom of selection as the donee of a power. The precedent to the contrary is reluctantly followed, because to do so defeats decedent's intention and gives her residuary estate to her heirs whom she intended to exclude as the necessary consequence of bequeathing her entire residuary estate in trust for others.

### 6. Disposition of residuary estate.

In view of the holding that the residuary trust under decedent's will is not valid and that the fund may not be awarded absolutely to the trustee, and that the trustee's selection may not be sustained as the exercise of a power of appointment, it follows that decedent died intestate as to her residuary estate, which is now distributable to her heirs.

And now, February 1. 1962, the account is confirmed nisi.